[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 11-14466; 11-14575
_____

D.C. Docket No. 5:10-cr-00036-ACC-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

SCOTT MICHAEL PATRICK,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 20, 2013)

Before CARNES, HULL, and FAY, Circuit Judges.

PER CURIAM:

The government, in two consolidated interlocutory appeals, challenges the

district court's partial grant of Scott Patrick's motion in limine, which excluded

two surveillance video recordings of the prison assault that led to the pending

criminal prosecution against Patrick.[1]  The district court excluded the surveillance videos under Federal Rule of Evidence 403, concluding that their probative value is substantially outweighed by the danger of unfair prejudice.

## I.

Patrick, an inmate housed at Coleman Federal Correctional Complex, has been charged with aiding and abetting an assault resulting in serious bodily injury to a fellow inmate, David Moghdam, in violation of 18 U.S.C. §§ 113(a)(6), (b)(2), and 2.  Patrick, along with inmates Thomas Malloy and Michael Thompson, was involved in a prison altercation with Moghdam, which ended with Moghdam being stabbed to death by Thompson.  Portions of the assault were captured by two prison surveillance cameras, one of which was narrowly zoomed in on the action (the close-up video), while the other recorded a wide-angle view of the cell block (the wide-angle video).[2]

The close-up video shows Patrick follow Moghdam off screen and, approximately 20 seconds later, Moghdam, Malloy, Patrick, and Thompson quickly sweep across the frame already embroiled in a fistfight.  Moghdam and Malloy almost immediately disappear from view, while Patrick and Thompson can

---

[1] We have jurisdiction over these interlocutory appeals under 18 U.S.C. § 3731, which provides, in relevant part, that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . ."  18 U.S.C. § 3731.

[2] The government later prepared a slow motion version of the close-up video, which it submitted to the district court.

be seen throwing punches in the victim's direction.  Patrick appears to grab Moghdam as Thompson raises his right arm and makes several downward striking motions with an object in his hand, although it is not entirely clear from the video what the object is in his hand.  Thompson and Patrick momentarily retreat back into the center of the frame and then advance in the direction of Moghdam, who is still off screen.  After 20 seconds of no visible action, Thompson briskly walks across the screen in the opposite direction and is soon followed by Patrick.  The close-up video does not depict the beginning of the fight or actually show Moghdam being stabbed, and the visible portion of the assault lasts no more than ten seconds.  The wide-angle video, comprised of a series of time-lapse images taken every few seconds, contains a distant and blurry depiction of the end of the assault.  A tangle of largely indistinct bodies emerges at the margins of the frame, Moghdam eventually collapses, and Patrick appears to strike or to attempt to strike the victim while he is on the ground.

Patrick filed a motion in limine to exclude all evidence of the stabbing and resulting death of Moghdam, including the two surveillance videos.  Patrick maintained that, in response to a planned attack on Moghdam by African-American inmates, he and Malloy jointly agreed to initiate a fistfight with Moghdam for the purpose of getting him transferred to solitary confinement and thereby preventing his death from igniting a potential "racial disturbance" in the

3

prison.  Patrick insisted that he and Malloy specifically agreed that the fight would not involve any weapons or any other participants, and that they did not anticipate that Thompson would step into the fray and repeatedly stab Moghdam.  Based on his factual account of the events, Patrick argued that the videos were irrelevant to the charged offense because he was neither the actual nor proximate cause of Moghdam's stab wounds, which were the result of Thompson's unforeseeable intervention in the fight.  He alternatively argued that, even if the videos were relevant, they should be excluded under Rule 403 because their probative value was substantially outweighed by the danger of unfair prejudice or by the risk that they would mislead or confuse the jury.  Patrick insisted that the videos portrayed an incomplete version of the events, which inaccurately implied that he, Malloy, and Thompson were acting in concert, and that the videos' depictions of Moghdam's stabbing and eventual collapse could serve no purpose other than to inflame the jury's emotions.

The district court held a hearing on the motion in limine, at which the government played the close-up video for the court and remarked that it had also prepared a slow motion version of that video.  Although the parties referred to the wide-angle video, it was not played for the court or discussed in much detail.  After the hearing the district court entered a written order granting Patrick's motion to exclude the close-up video, finding that its probative value was substantially

4

outweighed by the danger of unfair prejudice because it "show[ed] only the portion of the fight in which the victim is stabbed." The court, however, declined to exclude all evidence that Moghdam was stabbed, concluding that it was for the jury to decide whether Patrick's assault proximately caused the victim's stab wounds.

After the government had already filed a notice of interlocutory appeal from the district court's order, the court conducted a status conference at which the government proffered the close-up video, the slow motion version of that video, and the wide-angle video for inclusion in the record on appeal. The court noted that it had neither viewed nor ruled on the wide-angle video, to which the government's attorney responded, "frankly my assumption was that it [did not] show the entire fight either."

The district court issued a second order following the status conference to address the admissibility of the wide-angle video and to clarify its ruling on both videos. The court explained that it excluded the close-up video under Rule 403 because its "dominant feature" was Thompson's "dramatic," "graphic," and "highly prejudicial" stabbing motions, and because it did not clearly capture Patrick's actions before, during, or after the stabbing. The court also emphasized that exclusion of the close-up video would not deprive the government of "irreplaceable evidence" against Patrick because it could present eyewitness

5

testimony to prove that the stabbing occurred, which would likely be more probative of Patrick's actions during the fight and would not "contain the highly prejudicial visual stabbing images depicted in the video."  Because the government noted that the wide-angle video also depicted only a portion of the fight, the court likewise excluded that video under Rule 403.

The government filed a notice of interlocutory appeal from the district court's second order and the government's appeals have been consolidated.

## II.

The government contends that the district court abused its discretion by excluding the surveillance videos under Rule 403 because they offer highly probative and irreplaceable evidence of Patrick's role in the charged assault.  The government emphasizes that the videos depict the very attack at issue in the criminal case.  It also notes that the only witness willing to testify about the fight, Malloy, is both subject to impeachment on numerous grounds, including his status as a convicted felon, and cannot provide a detailed account of Patrick's role in the assault because of his own participation in the fight.  Furthermore, the government argues that any prejudice posed by the videos would not be unfair because they capture the assault that Patrick is charged with perpetrating, and the risk of any unfair prejudice does not substantially outweigh the probative value of the videos.

Patrick contends that the videos are either wholly irrelevant under Federal Rule of Evidence 401 or have minimal probative value because he has not been charged with murdering Moghdam, there is no dispute that the victim was stabbed, and he was not the actual or proximate cause of the stab wounds. Patrick also argues that any probative value that the videos may have is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues because the videos do not depict the entire fight and, by showing Moghdam being stabbed repeatedly and collapsing onto the ground, they can serve no purpose other than to inflame the jury's emotions.[3]

We review a district court's evidentiary rulings for an abuse of discretion. United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992). And a district court abuses its discretion when it commits a clear error of judgment or applies the law in an unreasonable or incorrect manner. See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011); Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010); Moorer v. Demopolis Waterworks and Sewer Bd., 374 F.3d 994, 996–97 (11th Cir. 2004). When a

---

[3] Patrick also asserts that, even if the district court abused its discretion in excluding the wide-angle video, the government invited the error by not playing the video for the court, as it had done with the close-up video, and instead commenting that the video was similarly incomplete. Under the doctrine of invited error, a party that invites a ruling by a district court cannot challenge the propriety of that ruling on appeal. See Maradiaga v. United States, 679 F.3d 1286, 1293 (11th Cir. 2012). Although the government conceded that the wide-angle video did not show the entire fight, it clearly and repeatedly voiced its objection to the exclusion of both the close-up and wide-angle videos. It in no way invited the district court to exclude either video or commit any error in doing so.

district court rules on evidentiary issues that "turn on matters uniquely within [its] purview," such as balancing "fact-specific concepts like probativeness and prejudice," we are loath to disturb those rulings because the district court "has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury." United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003). Nevertheless, precisely "[b]ecause the discretion traditionally accorded a district judge depends upon a superior ability to view witnesses and assess the impact of evidence," we are "freer to perform the Rule 403 balancing ab initio when the issue arises in limine." United States v. King, 713 F.2d 627, 631 (11th Cir. 1983).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402. A district court may nonetheless exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But we have repeatedly cautioned that Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011) (quoting United States v. Alfaro-Moncado, 607 F.3d 720, 734 (11th Cir. 2010)).

"In criminal trials relevant evidence is inherently prejudicial" and, thus, the rule "permits exclusion only when unfair prejudice substantially outweighs probative value." United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008) (quotation marks omitted).

The term "unfair prejudice," as applied to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997). The primary function of Rule 403 is to exclude evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." King, 713 F.2d at 631 (quotation marks omitted). "It is not designed to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none." United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979).[4] Accordingly, Rule 403 requires courts to "look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." Lopez, 649 F.3d at 1247 (quotation marks omitted). For all of these reasons, while a district court has broad discretion to admit relevant evidence, its "discretion to exclude evidence under Rule 403 is narrowly circumscribed." United States v. Smith, 459 F.3d 1276, 1295 (11th Cir.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

2006) (quotation marks omitted); accord United States v. Norton, 867 F.2d 1354, 1362 (11th Cir. 1989).

In the present case, it is clear to us that the district court struck the wrong balance under Rule 403 by excluding the two videos. In depicting the very events underlying the assault charge against Patrick, the videos are both relevant and highly probative on a number of issues of consequence, including whether Patrick committed an assault or aided or abetted in its commission, whether the victim suffered a serious bodily injury, and whether Patrick's actions were a proximate cause of those injuries. See 18 U.S.C. § 113(a)(6) (prohibiting an "[a]ssault resulting in serious bodily injury"); United States v. Hayes, 589 F.2d 811, 821 (5th Cir. 1979) ("A fundamental principle of criminal law is that a person is held responsible for all consequences proximately caused by his criminal conduct."). Patrick's apparent willingness to concede certain facts, including that the victim was stabbed and that the stab wounds qualify as serious bodily injuries, does not, as he suggests, make the videos irrelevant. See Old Chief, 519 U.S. at 179, 117 S.Ct. at 649–50 (explaining that "evidentiary relevance under Rule 401" is not "affected by the availability of alternative proofs," such as a defendant's admissions, and that the exclusion of relevant evidence "must rest not on the ground that other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial . . . .").

10

Patrick's concessions and the existence of live witnesses who could testify about the events also do not negate or significantly detract from the probative value of the videos. The standard rule is that, absent exceptional circumstances, "the prosecution is entitled to prove its case by evidence of its own choice" and a "criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." Id. at 186–87, 117 S.Ct. at 653. While Malloy is willing to testify at trial about the assault, the government asserts, without contradiction, that he cannot provide detailed testimony about what happened because of his own involvement in the fight. See King, 713 F.2d at 631 ("[W]hile prosecutorial need alone does not mean probative value outweighs prejudice, the more essential the evidence, the greater its probative value . . . ."). Malloy's grand jury testimony, which Patrick attached to his motion in limine, supports the government's position. Malloy testified that: he did not "pay attention" to Patrick during the assault because he "had tunnel vision" and was "just focused on fighting"; he did not know that Thompson was involved at the time of the assault; and he was "not sure" that Patrick "didn't have a knife."

On the other side of the equation, the videos are not unfairly prejudicial because they depict the assault that Patrick is charged with committing.[5] "That the

---

[5] We note that the government has stipulated that it will not show any portion of the videos that follow the victim's collapse onto the ground, and we expect that stipulation to be honored.

11

nature of the crime itself, and therefore the nature of the evidence tending to prove it, is emotionally charged does not mean that the prosecution must be deprived of its most probative evidence." Smith, 459 F.3d at 1296. Contrary to the district court's characterization of the close-up video as "dramatic," "graphic" and "highly prejudicial," both videos are remarkably muted for such a violent crime. The videos present a soundless, bloodless, largely sanitized version of the events, with Moghdam off screen during most of the fight, including the stabbing.[6] We have rejected Rule 403 challenges to relevant evidence far more graphic, gruesome, and emotionally charged than the videos at issue in this case. See United States v. De Parias, 805 F.2d 1447, 1453–54 (11th Cir. 1986) (rejecting a Rule 403 challenge to photographs of the "badly decomposed corpse" of a homicide victim), overruled on other grounds, United States v. Kaplan, 171 F.3d 1351, 1356–57 (11th Cir. 1999) (en banc); McRae, 593 F.2d at 707 (rejecting a Rule 403 challenge to "gross, distasteful, and disturbing" photographs of a murder victim and death scene because the photographs were not "flagrantly or deliberately gruesome depictions" of the crime).

---

[6] In a comparison worthy of Hollywood, Patrick likens the images depicted in the close-up video to the famous shower scene in Alfred Hitchcock's Psycho, asserting that those images are "reminiscent of the arced stabbing manner displayed by actor Anthony Hopkins as he is slaying actress Janet Leigh." But unlike the close-up video, Hitchcock's scene is anything but bloodless, soundless, and decidedly antiseptic. We also note that it was Anthony Perkins, not Anthony Hopkins, who played Norman Bates. See The Internet Movie Database, http://www.imdb.com/title/tt0054215/?ref_=sr_3 (last visited Feb. 28, 2013).

That the videos only present a portion of the assault does not render them unduly prejudicial, especially not to the degree that the risk of unfair prejudice substantially outweighs the probative value of the evidence.  A video recording of only a portion of the events is not inherently less admissible than the testimony of a live witness who saw only part of a crime or a photograph that captures an isolated moment from a single perspective.  Cf. Addison v. United States, 317 F.2d 808, 815 (5th Cir. 1963) (rejecting a challenge to the admission of a partially defective tape recording on the ground that "[t]here would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses") (quotation marks omitted); United States v. Doyon, 194 F.3d 207, 213 (1st Cir. 1999) ("An accurate tape recording of part of a conversation is not inherently less admissible than the testimony of a witness who heard only part of a conversation and recounts the part that he heard.").

The district court rejected the eyewitness comparison on the ground that an eyewitness who saw only a portion of the fight could be "cross-examined and talked to" and could presumably testify about the "entirety of [the] part" that he or she witnessed.  While it is undoubtedly true that the videos cannot be cross-examined, Patrick can point out their limitations to the jury and offer evidence to put what they depict in context.  Moreover, the district court's assumption that an

13

eyewitness, unlike the videos, could testify about the entirety of the events perceived is nothing more than that—an assumption.  And Malloy, the sole eyewitness willing to testify about the fight, is a prime example of how the court's assumption is false.  Malloy's grand jury testimony makes clear that the videos can provide a more detailed account of Patrick's role in the assault than Malloy can provide.  By itself, the relative incompleteness of the videos is not sufficient to override the default rule that "the prosecution is entitled to prove its case by evidence of its own choice."  Old Chief, 519 U.S. at 189, 117 S.Ct. at 654.  All evidence against a criminal defendant is prejudicial in the sense that it may incline the jury to convict, or it would not be evidence against him, and Rule 403 does not require "that the government choose the least prejudicial [or incriminating] method of proving its case."  See United States v. Dixon, 698 F.2d 445, 446 (11th Cir. 1983).

Although the district court's evidentiary ruling was not premised on any other ground listed in Rule 403, Patrick contends that we can uphold the exclusion of the videos anyway because of the danger that they would mislead or confuse the jury, or otherwise be unnecessarily cumulative.  While the videos do not depict the entirety of the fight, including its beginnings, they also do not present an undue risk of misleading or confusing the jury.  Patrick suggests that the videos are misleading because, according to his version of the events, he neither acted in

14

concert with Thompson nor anticipated his involvement and, by extension, he should not be held legally responsible for the stabbing. But those are questions for the jury to decide based on all available, relevant evidence of the assault, including the videos. Evidence is not misleading simply because it does comport with a defendant's assertions about what happened or what he should, or should not, be convicted of. Moreover, the admission of the videos in addition to the testimony of Malloy, or any other eyewitnesses who might materialize and opt to cooperate with the government, hardly constitutes a needless accumulation of evidence about the assault. Rule 403 does not preclude the admission of relevant evidence simply because other evidence addresses the same issues. See United States v. Eyster, 948 F.2d 1196, 1212 (11th Cir. 1991) ("Rule 403 does not mandate exclusion because some overlap exists between the photographs and other evidence.") (quotation marks omitted).

When the videos are viewed in the light most favorable to admission, as Rule 403 requires, the district court abused its discretion in ordering their exclusion because their probative value is not, by any reasonable estimation, substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusing the issues. The videos provide much more than "scant or cumulative probative force" on the assault charge against Patrick, and it simply cannot be said that the

15

government is merely dragging them in "for the sake of [their] prejudicial value."

See King, 713 F.2d at 631 (quotation marks omitted).

For these reasons, we vacate the district court's orders excluding the two

surveillance videos and remand for further proceedings.

**VACATED AND REMANDED.**

16