300 Ga. 505
FINAL COPY

S16A1537. PLEZ v. THE STATE.

BLACKWELL, Justice.

Chinua Anozienyako Plez was tried by a Clayton County jury and convicted of murder and other crimes in connection with the fatal stabbing of Gary Bussey. Plez appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court erred when it refused to charge the jury on voluntary manslaughter as a lesser included offense, and that it erred when it admitted certain photographs of the victim as evidence at trial. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Bussey was killed on October 22, 2011. A Clayton County grand jury indicted Plez on January 23, 2013, charging him with malice murder, felony murder, aggravated assault, criminal attempt to commit arson, theft by taking of a motor vehicle, and financial transaction card theft. His trial commenced on October 13, 2014, and the jury returned its verdict four days later, acquitting Plez of attempt to commit arson, and finding him guilty on all of the other counts. Plez was sentenced to imprisonment for life without the possibility of parole for malice murder, imprisonment for a concurrent term of ten years for theft, and imprisonment for a concurrent term of three years for financial transaction card theft. The verdict as to felony murder was vacated by operation of law, and the aggravated assault merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 371-374 (4)-(5) (434 SE2d 479) (1993). Plez timely filed a motion for new trial on October 22, 2014, and he amended it on October 22, 2015. The trial court denied the motion for new trial on February 3, 2016, and Plez timely filed a notice of appeal on February 15, 2016. The case was docketed in this Court for the September 2016 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Plez, his mother, and his sister lived in a home in unincorporated Clayton County, near the community of Rex. In October 2011, Bussey came to Atlanta to attend a college football game, and Bussey — a longtime friend of Plez's mother — made plans to stay with Plez and his family. On Saturday, October 22, Bussey attended the football game and a homecoming parade, Plez's mother left to spend the weekend with her boyfriend, and Plez's sister went to an appointment, leaving Plez at the home alone. Around 2:00 p.m., Plez called a friend in Florida, telling her that he was "stressed," that he needed $10,000, and that his own house had burned down. Later in the day, Bussey returned to the home to change clothes for an evening event. Bussey last used his cell phone at 6:45 p.m., and subsequent calls from his friends went unanswered. Around 7:40 p.m., Plez called his sister and asked her to stay away from the home, ostensibly to give Plez some private time with his girlfriend. About five minutes later, Plez called a friend nearby and asked for help moving something heavy. Around 8:15 p.m., Plez called the same friend again, admitting that he had killed a man and that he was planning to burn the home to destroy evidence of the killing. Plez placed these calls from a location near the home. When Plez's sister returned

2

home early on the morning of October 23, she found that all of the doors were locked, including the door to her mother's room. The sister noted as well that Plez was not at the home and that a fire alarm was sounding. The next morning, the sister and her boyfriend finally were able to open the door to the mother's room, and they entered it, discovering Bussey's unclothed body in an adjoining bathroom.

A forensic investigation revealed that Bussey had suffered 34 stab wounds — several of which were defensive — and substantial blood loss. An examination of blood at the scene indicated that Bussey was attacked while standing in the bathroom, that the attack continued into the mother's bedroom, and that Bussey had been dragged back into the bathroom. A bloody, three-inch knife was found in the bathroom, latex gloves (with Bussey's blood) were located in the bedroom, and a pair of jeans (covered in Bussey's blood) were discovered under the bed. What seemed to be kerosene was observed on the bedroom carpet and curtains, and a can of butane was found in the oven.

In the meantime, on the afternoon of October 23, Plez was observed using Bussey's debit card to withdraw $300 from an ATM. Plez then called his friend in Florida, telling her that he had gotten some money and was coming to see her.

Plez drove to Florida in Bussey's car, took his friend and her sister shopping, and bought them dinner. Law enforcement officers found Plez entering Bussey's vehicle, they confronted him, and he briefly gave thought to fleeing — starting the car and putting it in gear — before surrendering to the officers. At the time he was arrested, Plez was carrying a pocket knife, and a kitchen knife was found in the glove box of Bussey's car. Personal items in the car included copies of Plez's birth certificate and GED certificate, a "last will and testament," a bag containing a butane can, and papers containing information about persons to whom Plez owed money. Plez had no significant injuries at the time of his arrest.

Plez contends that the evidence is legally insufficient to sustain his convictions, noting that the prosecution failed to come forward with certain kinds of evidence — DNA evidence and a confession, for instance — that may be compelling in many criminal cases. Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence. Viewing the evidence admitted at trial (as we must) in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational jury to find beyond a reasonable doubt that Plez

4

was guilty of the crimes of which he was convicted. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Plez contends that the trial court should have charged the jury on voluntary manslaughter as a lesser included offense. Such a charge, however, is required only when there is at least slight evidence that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). See <u>Johnson v. State</u>, 297 Ga. 839, 842 (2) (778 SE2d 769) (2015). Plez points to evidence of pubic hairs on Bussey's hand as evidence of provocation, but we fail to see how that evidence suggests provocation when it was undisputed that Plez was not the source of those hairs. Plez did not testify, and there was no evidence that Bussey (unarmed and naked in the bathroom)

_____

[2] Plez also contends that he is entitled to a new trial because the verdict of the jury was "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, and "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. Trial courts have discretion to grant a new trial on these grounds — commonly known as the "general grounds" — but appellate courts do not. See <u>Slaton v. State</u>, 296 Ga. 122, 125 (2) (765 SE2d 332) (2014). Our review is limited to the legal sufficiency of the evidence. See <u>Cotton v. State</u>, 297 Ga. 257, 258 (1) (773 SE2d 242) (2015). Indeed, even when asked "to review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in <u>Jackson v. Virginia</u> . . . ." <u>Allen v. State</u>, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (punctuation omitted). See also <u>Simpson v. State</u>, 298 Ga. 314, 315 (1), n. 2 (781 SE2d 762) (2016). As we have explained, the evidence in this case meets the standard for legal sufficiency.

5

said or did anything that amounted to the serious provocation against Plez that would be necessary to require a charge on voluntary manslaughter. See Lawrence v. State, 286 Ga. 533, 534-535 (3) (690 SE2d 801) (2010); Keita v. State, 285 Ga. 767, 770 (2) (684 SE2d 233) (2009). Accordingly, the failure to charge on voluntary manslaughter in this case was no error.

3. Plez also contends that the trial court erred when it admitted certain photographs of Bussey's unclothed body at the scene of the crime, complaining that these photographs showed Bussey's genitals and were cumulative, inflammatory, and prejudicial. Under Georgia's new Evidence Code,[3] "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403 ("Rule 403"). The application of Rule 403 is a matter committed principally to the discretion of the trial courts, and as we have explained before, the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only

---

[3] The new Evidence Code applies in cases tried on or after January 1, 2013. See Olds v. State, 299 Ga. 65, 69 (2), n. 5 (786 SE2d 633) (2016). Plez was tried in October 2014, and so, the new Evidence Code applies in this case.

6

sparingly. See Davis v. State, 299 Ga. 180, 189 (2) (b) (787 SE2d 221) (2016); Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016). We see no abuse of discretion in the admission of these photographs.

The photographs in question showed the crime scene from different angles, the position of the victim's body after the stabbing, and the nature, location, and extent of the victim's wounds, and they were presented to the jury in connection with the testimony of a crime scene expert. As Plez points out, one photograph was taken from a position near Bussey's genitals and did not show his wounds. But that photograph did show blood smeared on Bussey's legs, and it was used by the crime scene expert to show how the body was moved. In all, these photographs assisted in the presentation of the opinions of the crime scene expert, and they were probative of the question of whether Bussey was killed with malice. See United States v. Patrick, 513 Fed. Appx. 882, 887 (II) (11th Cir. 2013); United States v. Brown, 441 F3d 1330, 1362 (II) (K) (11th Cir. 2006); United States v. De Parias, 805 F2d 1447, 1453 (II) (C) (11th Cir. 1986), overruled on other grounds, United States v. Kaplan, 171 F3d 1351, 1356-1357 (11th Cir. 1999). We note as well that the photographic depiction of Bussey's genitals was not especially gruesome and did not show any sort of genital

mutilation. See <u>Patrick</u>, 513 Fed. Appx. at 888 (II); <u>Brown</u>, 441 F3d at 1362-1363 (II) (K); <u>De Parias</u>, 805 F2d at 1454 (II) (C). And in any event, photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under Rule 403 merely because it is gruesome. See <u>Allaben v. State</u>, 299 Ga. 253, 260 (3) (f) (787 SE2d 711) (2016) (holding that two post-incision autopsy photographs, including a close-up photograph detailing the victim's injuries, "were not more prejudicial than probative" under OCGA § 24-4-403). See also <u>Moss v. State</u>, 298 Ga. 613, 618 (5) (b) (783 SE2d 652) (2016) (pre-autopsy "photographs are generally admissible even when the cause of death is not in dispute" (citation and punctuation omitted)). The trial court did not abuse its discretion when it admitted the photographs about which Plez complains.

<u>Judgment affirmed. All the Justices concur.</u>

Decided February 6, 2017.

Murder. Clayton Superior Court. Before Judge Simmons.

<u>Viveca R. Famber Powell</u>, for appellant.

8

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Jeff Gore, Philip D. Curtis, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Assistant Attorney General, for appellee.