In the Supreme Court of Georgia

Decided, February 4, 2019

S18A1468. YOUNG v. THE STATE.

BLACKWELL, Justice.

Preston Young was tried by a Henry County jury and convicted of murder and aggravated assault in connection with the death of his estranged wife, Sharon Sylvester.[1] Young contends that the evidence is legally insufficient to sustain his convictions, that he was denied effective assistance of counsel, and that the trial court erred in several ways, including in its evidentiary rulings and its jury charge. Upon our review of the record and briefs, we find no merit in these claims of error, and so, we affirm Young's

---

[1] Sylvester was killed on August 11, 2011. On November 17, 2011, a Henry County grand jury indicted Young, charging him with malice murder, felony murder, aggravated assault, and cruelty to children in the third degree. Young first stood trial in June 2013, but that proceeding ended in a mistrial. Young was re-tried beginning in October 2013, and a jury found him guilty of felony murder and aggravated assault. He was acquitted of malice murder, and the charge of cruelty to children in the third degree was dismissed by nolle prosequi. On November 5, 2014, the trial court sentenced Young to imprisonment for life for felony murder and a concurrent term of imprisonment for 20 years for aggravated assault. Young moved for a new trial on November 19, 2014, and he amended the motion on September 18, 2015 and June 6, 2016. The trial court denied the motion on September 29, 2017. Young timely appealed, and this case was docketed to the August 2018 term of this Court and submitted for a decision on the briefs.

conviction for murder. We do note, however, that the aggravated assault should have merged with the murder, and we vacate the conviction and sentence for aggravated assault.

1. Viewed in the light most favorable to the verdict, the evidence at trial shows the following. Young and Sylvester met in 2009 and married in February 2010. The couple separated about a year later, and Young filed for divorce in April 2011, seeking $50,000 in alimony. Sylvester counterclaimed, opposing any alimony and citing Young's adultery. On August 5, 2011, the couple had an unsuccessful divorce mediation.

Less than a week later, on the afternoon of August 11, 2011, Henry County Police officers responded to a request for a child welfare check at Sylvester's home after Sylvester's three-year-old granddaughter activated the OnStar device in a vehicle parked in the garage. Officers knocked on the doors and had dispatch call the home but were unable to reach anyone. After the officers entered the home through an unlocked door, they found Sylvester's body in the bathroom. Sylvester was cold to the touch, showed no signs of life, and had no visible injuries other than a little blood running from her nose. The officers found signs of forced entry at the backdoor, but the only items missing from the home were Sylvester's wedding ring and a photograph of Young.

2

Additionally, officers found an empty tube of antibiotic ointment that had been cut in half.

According to the medical examiner, Sylvester died from manual strangulation, as indicated by cartilage damage around her neck and the presence of extensive petechiae under her eyelids. In addition, the examiner found hemorrhages under her scalp, neck, back, arms, and legs. The hemorrhages occurred near the time of death and were evidence of blunt force trauma.

Around 9:30 on the evening of August 11, investigators contacted Young. They told him there was an emergency with his wife, and they needed to speak with him. Young initially agreed to meet at the police station that evening, but he then told investigators instead that he would speak with them at his home the next day. Officers were unable to locate Young at his home that evening and determined that he had fled. During their investigation, officers discovered that Young was dating two other women. One girlfriend told investigators that Young had stayed at her house on the night of August 9 and returned to her house briefly on the night of August 11. She testified that she saw no injuries on Young on August 9 but did see a scratch on his neck on August 11.

Police used Young's credit card transactions and emails to trace his whereabouts. On August 12, Young purchased antibiotic ointment from a Walmart in Dalton, Georgia. On August 15, Young sent emails from Orlando, Florida, and a few days later from DeKalb County, Georgia. On August 31, Young was located and arrested in Chamblee, Georgia. Young informed the arresting officers that he had been camping in the woods nearby. Upon his arrest, the officers documented scratches on Young's neck, shoulders, and forearms.

Young contends that the evidence is legally insufficient to sustain his convictions because there were no eyewitnesses to the killing and there was no DNA evidence linking him to the murder. This contention is without merit. Among other things, the State presented evidence that Young and Sylvester were in the midst of a contentious divorce, and days prior to her death, the two participated in an unsuccessful mediation. The only items missing from the home were Sylvester's wedding ring and a picture of Young. More significantly, after being contacted by the police, Young fled the area and remained in hiding until he was arrested by police. See McClain v. State, 303 Ga. 6, 9 (1) (810 SE2d 77) (2018) (evidence of flight may be "considered as an act reflecting consciousness of guilt"). In addition, an empty tube of

4

antibiotic ointment was found at the crime scene, Young purchased antibiotic ointment on the day after the killing, he was observed to have no injuries prior to the killing, and he had visible scratches afterwards. Despite Young's contention, the State had no obligation to present DNA evidence to prove his guilt. "Although the state is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." Plez v. State, 300 Ga. 505, 506 (1) (796 SEd2 704) (2017) (citation omitted). Taken as a whole, the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Young was guilty of murder and aggravated assault. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B), (99 SCt 2781, 61 LE2d 560) (1979).

2. Although Young raises no claim of merger error, we note that the trial court erred when it failed to merge the aggravated assault with the murder. The aggravated assault (as charged in the indictment) was based on Young beating Sylvester with his hands, and the murder was based on his strangling her. Merger generally is required when there is no deliberate interval between the non-fatal injuries that form the basis for aggravated assault and the fatal injury that forms the basis for the murder. See Alvelo v. State, 290 Ga. 609, 611-612 (2) (724 SE2d 377) (2012). In this case, there was no evidence of a deliberate

5

interval between the beating and the strangling. Accordingly, the conviction and sentence for aggravated assault must be vacated.

3. Young contends that the trial court abused its discretion when it allowed into evidence numerous photographs taken shortly after Young's arrest (and approximately 19 days after Sylvester's death), which depicted scratches on Young's neck, shoulders, and arms. Young argues that the State offered no evidence specifically linking the scratches to Sylvester's death, and for that reason, the evidence was irrelevant. We disagree.

"As a general rule, the admission of evidence lies within the sound discretion of the trial court. See Plez v. State, 300 Ga. at 507-508 (3). In this case, despite the 19-day delay between Sylvester's death and Young's arrest, the trial court did not abuse its discretion when it concluded the photographs were relevant. The State presented evidence that if attacked, Sylvester likely would have fought back, specifically by scratching her attacker. The State showed that an empty tube of antibiotic ointment was found at the murder scene, which implied that the attacker may have been injured, and Young purchased antibiotic ointment from a Walmart the day after Sylvester's death. Young's girlfriend testified that she noticed a scratch on Young's neck on August 11 that she had not seen on August 9. We cannot say as a matter of law

6

that the 19-day interval makes evidence of scratches irrelevant; it is not certain that scratches inflicted at the time of Sylvester's death would have completely healed in less than three weeks. And, the lack of DNA evidence tying the scratches to Sylvester goes only to the weight of the evidence, not its admissibility. See Chapel v. State, 270 Ga. 151, 154 (3) (B) (510 SE2d 802) (1998).

4. Young also argues that the trial court abused its discretion when it told the jurors during deliberations that they could vote their "conscience." After the jury had reached an impasse on the second day of deliberations, the judge polled the jury and concluded that further deliberations might allow the jury to reach a unanimous verdict. However, prior to sending the jury back to deliberate, the judge made the following statement:

> I want to caution you that at no point in the deliberations should your conversation become abusive to any member of the jury and you have indicated that as to two of the counts the vote is 11 to 1. What I don't want to happen is for the one to be abused in the jury deliberations. Each of you has an independent and individual duty to decide this case for yourself, and each of you have to do that based on your opinion of the evidence and your own conscience, and you have to reach that decision for yourself. I don't want anybody to surrender an honestly held opinion of the evidence simply to terminate these proceedings. I don't want the jury discussions to become abusive toward one person or to the smaller group, the minority in the vote.

Young argues that the trial court was wrong to tell the jurors to vote their conscience because it allowed the jurors to consider their own biases and prejudices (rather than the evidence) in making a decision. Upon review of a trial court's instruction, we must review the jury charges as a whole. Scott v. State, 302 Ga. 29, 31 (2) (805 SE2d 40) (2017).  In this case, we find no error in the instruction given. Taken as a whole, it is unlikely the jury would have understood that its verdict could be based on something other than the evidence. After polling the jury, the trial court attempted to convey that each juror had to assess the evidence for herself, and no juror should surrender her honest appraisal of the evidence merely for the sake of compromise. It was in this attempt that the trial court made reference to "conscience," and that is how a reasonable juror would have understood it. This Court has stated that a trial court may advise the jury of the importance of reaching a unanimous verdict that is consistent with the consciences of the jury members. See Ponder v. State, 229 Ga. 720, 721 (2) (194 SE2d 78) (1972); Yancy v. State, 173 Ga. 685, 691 (5) (160 SE 867) (1931) ("The trial judge may properly . . . urge [the jury] to make every effort to harmonize their views and to agree on a verdict consistent with their consciences."). In addition, at the beginning of the trial, the trial court instructed the jury that it was to make its decision based solely

on the evidence and testimony presented and the instructions given by the court. The jury charge was not error.

5. Young alleges that his trial counsel was ineffective in the way he handled the testimony of Pamela Bettis, Sylvester's divorce attorney. In particular, Young argues that his trial counsel allowed Bettis to impugn his character, including by suggesting that Young had been dishonest in the handling of certain lease agreements for rental homes owned by Sylvester. To prevail on a claim of ineffective assistance, Young must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Young must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687–688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Young must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Young has failed to carry it.

Most of the testimony given by Bettis would not have been objectionable on relevance grounds because it pointed to motive. Bettis's testimony concerned Young and Sylvester's finances, contentious marriage, and divorce proceedings, which the State pointed to as Young's motive for the murder. See Goodman v. State, 293 Ga. 80, 84 (3) (742 SE2d 719) (2013) ("Evidence of the defendant's motive is relevant, even though it may incidentally place the defendant's character in evidence." (citation omitted)). The failure to make a meritless objection cannot serve as a ground for an ineffective assistance claim. Faulkner v. State, 295 Ga. 321, 326 (4) (758 SE2d 817) (2014). Considering that much of the testimony would have been admissible in any event, trial counsel explained at the hearing on Young's motion for new trial that his decision to not object to the testimony of Bettis was a matter of trial strategy. Objections might have suggested to the jury that Young was concerned about Bettis's testimony. And, trial counsel reasoned that, without objections, Bettis's testimony would lead the jury to see her as hostile and combative

toward Young. Indeed, the trial court cautioned Bettis during her testimony to remember that she was serving as a witness to the case and not as an advocate for her client. Whether the potential upside of arguably objectionable testimony exceeds its downside is a question of trial strategy, and Young has failed to show that his lawyer's strategy was patently unreasonable. See Green v. State, 291 Ga. 287, 296 (10) (a) (728 SE2d 668) (2012). Accordingly, Young has failed to overcome the strong presumption that his lawyer performed reasonably.  For these reasons, Young has failed to carry the heavy burden to prove ineffective assistance of counsel.

6. Young also argues that the prosecuting attorney engaged in misconduct in closing arguments by his comments about what the scratches on Young's body proved. During closing arguments, the prosecutor stated:

> If you ask me, those are scratches that had been healing for about two weeks because someone had the wherewithal and the smarts to put Neosporin on them from day one.

Young argues that by making this statement, without any evidence to support it, the State committed prosecutorial misconduct and tried to unfairly sway the jury about what the evidence proved. In addition, Young argues that his counsel was ineffective in failing to object after the statement was made.

Both of these contentions lack merit. First, Young has forfeited his underlying claim of prosecutorial misconduct because his counsel did not object after the statements were made. Failing to object to an improper closing argument results in a forfeiture of the right to appeal on that issue. Gates v. State, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016). Second, Young's claim of ineffective assistance of counsel fails as well. Again, to prove ineffective assistance of counsel, Young must show the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland, 466 U. S. at 687 (III). Young cannot show that his lawyer's performance was deficient. Defense counsel testified at trial that he chose not to object during closing argument because he did not want to draw attention to the case's most problematic facts. This strategy was not unreasonable. In addition, an objection would have been meritless because the prosecutor was simply drawing a reasonable inference based on the facts, which was not improper. See Mason v. State, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001).

7. Finally, Young argues that because his arrest was based on a misleading affidavit, the trial court should have granted his request for a

12

<u>Franks</u>[2] hearing and his motion to quash the indictment.[3] Prior to trial, Young filed a motion pro se requesting a <u>Franks</u> hearing, which alleged that the police lied in their affidavit used to support Young's arrest warrant. The trial court denied Young's request for a <u>Franks</u> hearing, observing that Young had failed to show "what consequences would flow from the 'nullification' of the arrest warrant." In addition, the trial court stated that Young was given a preliminary hearing where a magistrate judge found that probable cause existed, and then indicted by a grand jury, which offered additional independent proof that probable cause existed. Young then submitted, through counsel, a motion to quash the indictment, which argued that the police materially misrepresented facts to the grand jury to secure an indictment. The trial court denied the motion, stating that it had no way of knowing what statements were made to the grand jury due to privilege. We find the trial court committed no error.[4]

---

[2] <u>Franks v. Delaware</u>, 438 U. S. 154 (98 SCt 2674, 57 LE2d 667) (1978). A <u>Franks</u> hearing allows the defendant an opportunity to challenge the validity of a search warrant if he can show it was supported with a false affidavit.

[3] We need not address whether a Franks hearing may be used to attack the validity of an arrest warrant. But see <u>Kelly v. Curtis</u>, 21 F3d 1544, 1554 (II) (A) (2) (b) (11th Cir. 1994) (allowing a <u>Franks</u> hearing to challenge an arrest warrant).

[4] Young's arguments appear to commingle the affidavits used for his arrest warrant and search warrants. However, his motion for a <u>Franks</u> hearing was based on his arrest warrant. Thus, any issue concerning his search warrant has not been properly preserved. See <u>Nichols v. State</u>, 285 Ga. 784, 785 (2) (a) (683 SE2d 610) (2009).

First, regardless of whether Young's request for a Franks hearing was properly denied by the trial court, his argument fails because he was both indicted and convicted, which supersedes his arrest warrant. "[W]here the defendant has been indicted and convicted, an illegal arrest based on a defective warrant is not alone a ground for reversal." Goodman v. State, 251 Ga. App. 350, 351 (6) (553 SE2d 179) (2001).

We likewise find no error in the trial court's denial of Young's motion to quash the indictment. Although "we are unable to verify [Young's] assertions, as secrecy is maintained with regard to grand jury proceedings," Ward v. State, 288 Ga. 641, 643 (2) (706 SE2d 430) (2011), we find no grounds for reversal.

> [W]here a competent witness is sworn properly and testifies before the grand jury, and where the defendant is thereafter found guilty beyond a reasonable doubt by a trial jury, the sufficiency of the evidence to support the indictment is not open to question.

Smith v. State, 279 Ga. 48, 50 (4) (610 SE2d 26) (2005) (citation and punctuation omitted). Young has not shown that any grand jury witness was incompetent or not sworn properly. Accordingly, the trial court committed no error in refusing to grant a Franks hearing or quash the indictment.

Judgment affirmed in part and vacated in part. All the Justices concur.

14