**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten days**
**of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 27, 2026**

# In the Court of Appeals of Georgia

A25A2108. PENNAMON v. STATE.

PADGETT, Judge.

After a jury trial, Johnny Pennamon was convicted of three counts of incest and other offenses. Following the denial of his motion for new trial, Pennamon challenges the sufficiency of the evidence supporting his incest convictions and argues that the trial court committed an evidentiary error. For following reasons, we affirm.

1. *Facts and procedural history*

Viewed in the light most favorable to the verdict,[1] the evidence shows that M. P. lived with her grandmother (the "Grandmother"). At trial, the Grandmother testified that she and Pennamon are the parents of M. P.'s mother (the "Mother"). The Mother testified that Pennamon and the Grandmother were her biological parents, and that M. P. was her daughter. M. P. testified that the Mother was her mother and that Pennamon was her grandfather. A GBI forensic biologist testified that she tested buccal swabs obtained from Pennamon, the Mother, and the Grandmother, revealing that there is a 99.9998 percent probability that Pennamon is the biological father of the Mother.

M. P. and her brother stayed with the Mother on the weekends and during the summer. During these times, Pennamon would watch M. P. and her brother when the Mother had to work. Pennamon also knew where the Grandmother lived because the Mother took Pennamon with her when she dropped the children off at the Grandmother's home.

On September 5, 2015, the Grandmother heard noise in then 16-year-old M. P.'s bedroom. The Grandmother opened M. P.'s door, moved the window's blinds, and saw Pennamon's face in the window. M. P. testified that Pennamon had knocked

---

[1] See, e.g., *Jackson v. Virginia*, 443 US 307, 318–19(III)(B) (99 SCt 2781, 61 LE2d 560) (1979).

on the window and asked her to let him inside. Pennamon had not been invited to the home. Pennamon then told the Grandmother that the Mother sent him to get a key from M. P., but M. P. did not have a key. The Grandmother told Pennamon he was "going to jail or hell, one, tonight," and then Pennamon fled. The Grandmother contacted the Mother about what had happened and called 911. The following morning Pennamon returned to the Mother's home, where he was arrested for criminal trespass.

Shortly after this incident, M. P. began therapy. After beginning therapy, M. P. disclosed to her Mother that Pennamon had tried to put his "thingy" in her. M. P. testified at trial that Pennamon put his penis in her, placed his mouth on her vagina and "ate [her] out," and touched her breasts and butt. Pennamon told M. P. that these sexual acts were "all right" because he was her "granddaddy." At the same time, Pennamon threatened to kill M. P. if she told people about what was happening.

In April 2016, law enforcement received information that M. P. had disclosed sexual abuse to her therapist and began investigating the matter. Pennamon was eventually charged with three counts of incest, one count of rape, two counts of aggravated sodomy, two counts of sexual battery, one count of cruelty to children in the first degree, and one count of criminal attempt to commit a felony. After a jury

trial, Pennamon was convicted on all counts. Pennamon filed a motion for new trial, which was denied after a hearing. This appeal followed.

2. *Sufficiency of the evidence for incest convictions*

Pennamon contends that the State "never produced an iota of evidence showing any such biological relationship" between him and M. P., and thus there was insufficient evidence of the "relationship by blood" to sustain his incest convictions. We disagree.

> Under OCGA § 16-6-22 (a),
>
> A person commits the offense of incest when such person engages in sexual intercourse or sodomy, as such term is defined in Code Section 16-6-2, with a person whom he or she knows he or she is related to by blood, by adoption, or by marriage as follows:
>
> . . . .
>
> > (4) Grandparent and grandchild of the whole blood or of the half blood or by virtue of adoption[.]

Additionally, OCGA § 24-14-8 provides in relevant part that "[t]he testimony of a single witness is generally sufficient to establish a fact."

Here, the DNA evidence showed that there is a 99.9998 percent probability that Pennamon is the biological father of M. P.'s mother. Both the Mother and M. P. testified that the mother was M. P.'s mother. And Pennamon referred to himself as

M. P's "granddaddy." "This evidence was sufficient evidence from which the jury could conclude that [Pennamon] and the victim were related by blood and that [Pennamon] knew of his blood relationship with the victim at the time of the crime, as is required to support [Pennamon's] conviction for incest." *McNeal v. State*, 363 Ga. App. 417, 419(1)(a) (867 SE2d 824) (2022) (citation modified).

To the extent that Pennamon argues that stronger evidence as to his blood relationship to M. P. could have been admitted, we are unconvinced. "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506(1) (796 SE2d 704) (2017). Moreover, it is well accepted that "[t]he testimony of a single witness is generally sufficient to establish a fact," see OCGA § 24-14-8, and that "[c]orroboration of the victim's testimony is not necessary to support a conviction for incest[.]" *Peterman v. State*, 373 Ga. App. 847, 851(2) (909 SE2d 466) (2024) (citation modified). Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence as to Pennamon's relationship to M. P. as her grandfather to support the incest convictions against him. See *Peterman*, 373 Ga. App. at 850–51(2).

3. *Evidentiary error*

Pennamon claims that the trial court erred in excluding evidence that M. P. had herpes and Pennamon did not, as relevant to his defense that he did not have sexual relations with M. P. We find this argument unavailing.

Georgia's Rape Shield Statute prohibits evidence regarding a complaining witness's past sexual behavior, with limited exceptions. See OCGA § 24-4-412. Among those exceptions is "[e]vidence whose exclusion would violate the defendant's constitutional rights." OCGA § 24-4-412(b). Accord *White v. State*, 305 Ga. 111, 115(1) (823 SE2d 794) (2019). In assessing the admissibility of evidence, we note that "[t]he trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Jones v. State*, 305 Ga. 750, 751 (2) (827 SE2d 879) (2019) (citation modified).

Here, there is no merit to Pennamon's contention that he was entitled to introduce evidence that M. P. had herpes in order to prove that he did not have sex with M. P. To the extent Pennamon sought to cross-examine M. P. on this issue in order to test her veracity, the Supreme Court expressly held in *White* that "[t]here is no exception written into the statute for any party to introduce evidence of a complaining witness's sexual behavior that is 'otherwise relevant' but that falls outside of the scope of [the] statutory exception[s]" contained in OCGA § 24-4-412(b). *White*, 305 Ga. at 118(2) (citation modified).

6

We are also not persuaded by Pennamon's arguments that the exception provided in OCGA § 24-4-412(b)(4) applies and that he was denied his constitutional right of confrontation. In a similar case, *Freeman v. State*, 367 Ga. App. 57, 63–64(2) (885 SE2d 27) (2023), we determined that a trial court did not err in preventing a defendant to cross-examine the witness under the (b)(4) exception to the Rape Shield Statute. There, the defendant argued that he was denied his constitutional right of confrontation by not being able to cross-examine the witness as to her prior sexual history due to the discovery of semen at the crime scene, in order to prove that the sex he had with the victim was consensual and that the victim's assailant was someone else. *Freeman* 367 Ga. App. at 63(2). The victim had claimed to a detective that she had not had sex for five days prior to the rape. Id. As we stated, however, "the victim never testified that she had not had sex for five days prior to the rape," but instead had made an out of court statement. Id. "Because the jury was never made aware of the statement there was nothing for [the defendant] to impeach[,]" and "nothing about the victim's past sexual behavior with other people shows that she knew — or did not know — [the defendant] or consented to the sexual encounter with him." Id. at 63–64(2). Similarly, here, M. P. did not claim that she had contracted herpes from Pennamon, there was no evidence introduced about M. P. having herpes or how it is contracted, and evidence that M. P. had herpes would not

directly contradict anything in the State's case. Id. Thus, the evidence did not fall under an exception to the rape shield statute. Id.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*