301 Ga. 205
FINAL COPY

S17A0673. JOHNSON v. THE STATE.

GRANT, Justice.

On May 16, 2009, Tremaine Marcus Cobb was shot and killed in a Waffle House parking lot in Augusta, Georgia. A Richmond County grand jury indicted appellant Nicholas Johnson, along with co-defendants Joseph Ty're Downs and Jonathan Harrell, for crimes related to the shootout. A jury found Johnson guilty of felony murder and two counts of aggravated assault, and Johnson appeals.[1] On appeal, Johnson contends that there was insufficient

---

[1] On April 12, 2011, Johnson was indicted for the following crimes: malice murder; felony murder predicated on the aggravated assault of Cobb; aggravated assault perpetrated on Exzavius Bray; aggravated assault perpetrated on Denvanquez "Petey" Burley; possession of a firearm during the commission of a crime by a convicted felon, predicated on the aggravated assault and murder of Cobb; possession of a firearm during the commission of a crime by a convicted felon, predicated on the aggravated assault of Bray; and possession of a firearm during the commission of a crime by a convicted felon, predicated on the aggravated assault of Burley. At a trial held November 7–10, 2011, the jury found Johnson guilty of felony murder and two counts of aggravated assault. The State nol prossed the three counts of possession of a firearm by a convicted felon. The trial court sentenced Johnson to serve life in prison for felony murder and twenty years each for the two counts of aggravated assault

evidence to support his convictions for felony murder and aggravated assault, that the trial court erred by refusing to sever Johnson's trial from Downs's trial, and that the trial court abused its discretion in denying the jury's request to view, during deliberations, surveillance video of the shooting that was admitted as evidence and shown during the trial. Finding no merit in these enumerated errors, we affirm.

## I.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on May 16, 2009, Johnson, along with Downs and Harrell, fired a gun into a crowd of people standing in a Waffle House parking lot. Cobb, Denvanquez "Petey" Burley, and Exzavius Bray were all struck with bullets, and Cobb died as a result. One of the victims, Burley, recognized Johnson as one of the shooters because Johnson had previously robbed him. Burley had known Johnson since grade school, and the two had attended school together in eighth

_____

to run consecutive with each other and consecutive with the felony murder charge. On November 14, 2011, Johnson filed a motion for new trial, which was amended on June 1, 2015. Following a hearing on June 7, 2015, the trial court denied his motion on January 14, 2016. Johnson filed a timely notice of appeal, and the case was docketed in this Court to the term beginning December 2016 and was submitted for decision on the briefs.

or ninth grade. In fact, earlier on the night of the shootout, Johnson had confronted Burley at Club Fusion about the robbery. Johnson was upset that Burley had talked to police about the robbery and had implicated Johnson in the crime. The men got into a fight and were kicked out of the club. While they were leaving, Johnson pointed his "trigger finger" at Burley, which Burley took as a threat.

After being kicked out of Club Fusion, Burley and his friends drove to a nearby Waffle House and went inside. When Burley stepped out of the Waffle House, Johnson and Downs approached him in the parking lot. Bray, Cobb, and others saw Johnson and joined Burley in the parking lot. At the time Johnson approached Burley in the parking lot, Burley did not have a gun, but Johnson and his accomplices were armed with pistols. An argument ensued, and Johnson, along with his accomplices Downs and Harrell, fired multiple shots at Burley and his friends. Burley was struck in the thigh, Bray was injured, and Cobb was struck with a fatal bullet to his head. Harrell admitted that he and Johnson both fired multiple shots at Burley's group while they were in the parking lot. For his part, Bray admitted that he grabbed a rifle from another

3

member of Burley's group, Terrance Hanna, and fired at least one shot at Johnson and his accomplices; those shots prompted additional return fire.

Hanna had witnessed Burley's earlier argument with Johnson at Club Fusion. Hanna also saw Johnson (whom he identified in court) approach Burley in the Waffle House parking lot. Hanna testified that Johnson started shooting first, and confirmed that Bray attempted to return fire. A few weeks after Cobb's death in the shooting, Hanna returned to Club Fusion wearing a shirt bearing the phrase "Rest in Peace Tremaine" with a picture of Cobb on it. While he was at the club, Hanna got into a fight with Downs, who claimed responsibility for shooting Cobb.

A surveillance camera captured the shootout in the Waffle House parking lot, and that footage shows Johnson and his accomplices firing their weapons at Bray, Cobb, Burley, and their associates. Investigators also collected multiple shell casings from guns of various calibers at the scene, including nine .40 caliber shells and fourteen .45 caliber shells; Cobb's death was the result of a .40 caliber bullet that struck him in the head. Harrell, in turn, testified that Johnson carried a .40 caliber pistol and Downs carried a .45 caliber pistol on the night of the shooting.

## II.

Johnson first contends that the State did not produce sufficient evidence at trial to prove beyond a reasonable doubt that he was guilty of felony murder or the aggravated assault charges. We disagree.

As discussed above, the State's evidence of Johnson's guilt included the surveillance video, accomplice testimony, testimony regarding the shell casings found at the scene, testimony from a ballistics expert that Cobb was killed by a .40 caliber bullet, testimony from one witness that Johnson was shooting a .40 caliber gun, witness testimony generally identifying Johnson as one of the people who fired a gun into the gathered group, and testimony that Johnson and his group fired first. Johnson's sufficiency challenge appears to suggest that the State failed to show that he was the person who fired the fatal shot. But that claim cannot succeed because the evidence reflects, at a minimum, that Johnson and his accomplices intended to fire their weapons repeatedly into the group. That is enough. See *Pyatt v. State*, 298 Ga. 742, 744-745 (1) (784 SE2d 759) (2016) (affirming murder conviction where the evidence, viewed in the light most favorable to the verdict, showed that defendant was one member of a group of persons involved in a fatal shooting). Johnson also contends those rounds

were fired in self-defense, but the jury was entitled to reject that contention. See *Clark v. State*, 271 Ga. 27, 29 (1) (518 SE2d 117) (1999) ("The jury was entitled to accept the circumstantial evidence of an intentional act, and reject the claim that the shooting . . . was done in self defense."). Accordingly, "[v]iewing the evidence admitted at trial (as we must) in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational jury to find beyond a reasonable doubt that [Johnson] was guilty of the crimes of which he was convicted." *Plez v. State*, 300 Ga. 505, 506-507 (1) (796 SE2d 704) (2017) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt. 2781, 61 LE2d 560) (1979)).

## III.

Johnson's next enumeration is that the trial court erred by refusing to sever his trial from the trial of co-defendant Downs. Johnson now contends that he and Downs had antagonistic defenses and that the "convoluted and contradictory" nature of the evidence in this case demanded that he and Downs be tried separately. But because Johnson failed to raise these arguments to the trial court, they are not preserved for our review.

Prior to trial, Johnson's *co-defendant* Downs filed a motion to sever, arguing that because there was a motive that pertained only to Johnson — bad blood between him and Burley — Downs's trial should be severed from Johnson's. But Johnson did not join in that motion. Consequently, he failed to obtain a ruling on the issue, and cannot raise it for the first time in this Court. *Hill v. State*, 274 Ga. 591, 593 (2) (528 SE2d 793) (2000) (severance issues not preserved for review where defendant filed a motion to sever and did not invoke a ruling on his motion, but instead announced he was ready for trial); *Moore v. State*, 272 Ga. 359, 360 (3) (555 SE2d 696) (2001) (declining to consider severance argument for the first time on appeal where the appellant did not file a motion for severance, failed to join his co-defendant's motion, and did not request to be tried separately below).

Moreover, even if this error had been preserved, antagonistic defenses are insufficient to require severance in a non-death penalty case absent a showing of prejudice. *Krause v. State*, 286 Ga. 745, 749 (5) (691 SE2d 211) (2010) (affirming that unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require severance). The record, moreover, reflects that Johnson and Downs did not pursue opposing defenses at trial and there is

7

no indication that Johnson suffered any prejudice from the joint trial. For all these reasons, we find no merit to this enumeration of error.

IV.

Johnson's final contention is that the trial court abused its discretion in denying the jury's request to watch, during deliberations, the surveillance video that was shown at trial. Here, too, we disagree. Whether to grant a jury's request to review video evidence is squarely within the trial court's discretion. See *Morris v. State*, 254 Ga. 273, 273 (3) (328 SE2d 547) (1985); *Smith v. State*, 280 Ga. 161 (625 SE2d 766) (2006). In fact, we have long held that, in Georgia, "a judgment will not be reversed because the trial court declines to aid the jury in recalling the evidence and refuses a request to have certain testimony read back." *Smith*, 280 Ga. at 162-163 (2) (citation and punctuation omitted). The court thus acted within its discretion, and Johnson has not set out any reason the court's ruling may be disturbed.

Judgment affirmed. All the Justices concur.

Decided May 15, 2017.

Murder. Richmond Superior Court. Before Judge Brown.

<u>Trotter Jones, James S. V. Weston</u>, for appellant.

<u>Ashley Wright, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General</u>, for appellee.