302 Ga. 795
FINAL COPY

S17A1541.  PIKE v. THE STATE.

HINES, Chief Justice.

Matthew Jacob Pike appeals his conviction and sentence for malice murder and related crimes in connection with the death of Justin Klaffka.  He challenges the denial of severance of his trial from that of his co-indictees, the admission of certain evidence, and the legal sufficiency of the evidence of his guilt.  For the reasons that follow, the challenges are without merit and we affirm.[1]

---

[1] The crimes occurred on April 10, 2012.  On June 5, 2012, a Houston County grand jury returned an indictment against Pike, William Slaton, and Daniel Slaton charging them jointly with nine counts: Count 1 – malice murder; Count 2 – felony murder while in the commission of aggravated battery; Count 3 – aggravated battery; Count 4 – felony murder while in the commission of kidnapping with bodily injury; Count 5 – kidnapping with bodily injury; Count 6 – felony murder while in the commission of aggravated assault; Count 7 – aggravated assault; Count 8 – tampering with evidence by removing and burning the victim's clothing; and Count 9 – tampering with evidence by removing blood from the crime scene.  Pike and William Slaton were tried jointly before a jury July 15-18, 2013, and Pike was found guilty of Counts 1 through 7; Counts 8 and 9 were nolle prossed.  On July 19, 2013, Pike was sentenced to life in prison without the possibility of parole on Count 1 – malice murder; the trial court ruled the remaining counts either merged for the purpose of sentencing or stood vacated by operation of law and the rulings have not been challenged.  See *Dixon v. State*, 302 Ga.  (808 SE2d 696) (2017).  He filed a motion for new trial on July 22, 2013, and an amended motion for new trial on October 7, 2016.  The motion for new trial, as amended, was denied on January 4, 2017.  A notice of appeal was filed on February 2, 2017, and the case was docketed to the August 2017 term of this Court.  The appeal was submitted for decision on the briefs.

The evidence construed in favor of the verdicts showed the following. On the evening of April 8, 2012, Pike, William Slaton ("Slaton"), and Klaffka entered the Houston County mobile home residence of Garrett Fluellen ("Fluellen") and committed armed robbery. Slaton's brother, Daniel Slaton ("Daniel"), had driven the men to and from the crime scene. Anthony Scott and others were at Fluellen's residence at the time of the armed robbery; Scott knew Klaffka as he had previously traded drugs with him. During the armed robbery, Fluellen got a glimpse of one attacker's face, and was able to run away and call 911. When Pike, Slaton, and Klaffka returned to Daniel's car, Pike cut Klaffka on the right thigh and was "cussing him out" because Pike was angry at Klaffka for letting Fluellen escape. Pike and Slaton became worried that Klaffka would implicate them in the armed robbery.

On April 10, 2012, Klaffka's girlfriend, Amanda Mitchell, witnessed a fight between Pike, Slaton, and Klaffka at 119 Dixie Trail in Houston County, where Pike was living along with Slaton, Daniel, and Pike's brother, David Pike ("David"). Pike and Slaton confronted Klaffka and began to beat him; Pike hit Klaffka on the right side of his head. After the beating, Klaffka was bleeding very badly and was taken into the bathroom shower to be cleaned up. Then

2

Pike, Slaton, and Daniel walked Klaffka to Daniel's car and Pike directed Daniel where to drive; the three men drove Klaffka to a Houston County boat ramp on the Ocmulgee River, an area known as Knowles Landing. After arriving at the boat ramp, Klaffka was taken out of the vehicle; Pike held a knife to Klaffka's neck. The men began to argue and then Slaton, who was standing behind Klaffka, put his arm around Klaffka's neck and started to choke him. After a couple of minutes, Pike told Slaton to "get out of the way" because he was "doing no good" even though Klaffka "had the fight already out of him" and was "hardly doing anything." Pike put his hands around Klaffka's neck and Pike and Slaton took Klaffka down to the river. Pike began to simultaneously choke and attempt to drown Klaffka, and then left Klaffka in the water. Pike and Slaton got back in the car and removed their clothing. Pike reached over with his knife to Daniel, threatening Daniel that if he said anything he would kill him. Pike stated that "it went too far, that he couldn't just let [Klaffka] go because he would go tell the cops." The three men drove back to 119 Dixie Trail; David had cleaned up the bathroom with bleach. That night, Pike and Slaton burned their clothes. They told David that they "threw [Klaffka's] ass off of [Highway] 96," and that they had killed Klaffka and floated him down the

3

river.

On April 15, 2012, fishermen at Knowles Landing discovered Klaffka's body floating in the river. The medical examiner determined that Klaffka's injuries were consistent with manual strangulation and that the cause of death was asphyxia due to strangulation in conjunction with blunt force head trauma.

1. In separate enumerations of error, Pike contends that the State's evidence as a whole was legally insufficient to support his murder conviction, and that the trial court erred in refusing to direct verdicts of acquittal on all of the charges against him because the State failed to establish venue in Houston County. But, such contentions are wholly without merit.

The State presented ample evidence of the elements of the crimes charged, including that of venue, which is a jurisdictional element of every crime requiring that the State prove it beyond a reasonable doubt. *Bulloch v. State*, 293 Ga. 179, 187 (4) (744 SE2d 763) (2013). Consequently, we view the evidence of venue as we do in a challenge to the general sufficiency of the evidence, that is, the evidence of venue is viewed in a light most favorable to supporting the verdicts in order to determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that

4

the crime or crimes were committed in the county in which the defendant was indicted. *Propst v. State*, 299 Ga. 557, 561 (1) (b) (788 SE2d 484) (2016). In general, a criminal action is to be tried in the county in which the crime or crimes were committed. Id.; see Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a).[2] However, OCGA § 17-2-2 (h) provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." And, the provisions of subsection (h) may be used to determine venue in homicide cases. See *Bulloch v. State*, supra at 187 (4). What is more, the State can prove venue by both direct and circumstantial evidence. *Propst v. State*, supra at 561 (1) (b).

In this case, the State presented testimony at trial establishing that the crimes against Klaffka culminating in his murder were committed in Houston County. Such testimony included, inter alia, that Knowles Landing, the place where Klaffka's body was discovered, was in Houston County, that Klaffka was

---

[2] OCGA § 17-2-2 (a) provides:
> **In general**. Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law.

5

severely beaten at 119 Dixie Trail, which was in Houston County, and that he was then taken to Knowles Landing where he was strangled to death. The evidence established beyond a reasonable doubt that venue was properly in Houston County. *Bulloch v. State*, supra at 187 (4). Thus, the failure to prove venue was not a meritorious basis for granting directed verdicts of acquittal. What is more, the evidence as a whole was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Pike was guilty of the crime for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Pike next contends that the trial court erred in denying his motion to sever because his defense, which was that the State's evidence did not overcome his presumption of innocence, was antagonistic to that of his co-defendant, Slaton;[3] Pike argues this was so because in the joint trial with Slaton he was forced to defend himself against not only the proof offered by the State, but also the alibi defense argued by Slaton's counsel,[4] i.e., that only Pike and Daniel killed Klaffka and Slaton was not present, so that he suffered prejudice

---

[3] Co-indictee Daniel entered guilty pleas prior to trial and testified as a witness for the State.

[4] Neither Pike nor Slaton testified at trial.

6

amounting to a denial of due process. But, the argument is unavailing.

First, the transcript of the hearing in the matter reveals that Pike failed to make the present argument to the trial court. His argued basis below for severance was the likelihood that at trial the State would "get into" Slaton's extensive prior criminal history, and that Pike would get "lumped up with that," and thus, prejudice the jury against him. In any event, even if the present challenge of antagonistic defenses is preserved for our review, "antagonistic defenses are insufficient to require severance in a non-death penalty case absent a showing of prejudice." *Johnson v. State*, 301 Ga. 205, 208 (III) (800 SE2d 296) (2017).

> [I]t is not enough for a defendant to raise the possibility that a separate trial would have given him a better chance of acquittal; a defendant is entitled to severance only where there is a clear showing of harm or prejudice and a showing that failure to sever would result in the denial of due process. [Cit.] A defendant cannot rely upon antagonism between co-defendants to show prejudice and the consequent denial of due process; a defendant must show that

7

the failure to sever harmed him.

*Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).  Pike's claim that the joint trial with Slaton forced him not only to defend against the proof offered by the State, but also to defend against the  defense pressed by Slaton does not demonstrate the required prejudice and denial of due process because such a situation exists in any case in which  co-defendants have antagonistic defenses. *Marquez v. State*, 298 Ga. 448, 450-451 (2) (782 SE2d 648) (2016).   What is more, despite Slaton's argued alibi defense, the jury arrived at guilty verdicts against Slaton as well as Pike, obviously accepting the State's case which was substantially the same for Pike and Slaton. There is nothing to suggest that the outcome of Pike's trial would have been different had he been tried separately from Slaton.  Simply, Pike has failed to demonstrate that he was  prejudiced by the joint trial so that he was denied due process; consequently, there is no showing that the trial court abused its discretion in denying severance.  Id.

3. Pike also contends that the trial court erred in allowing, over objection, certain autopsy photographs of Klaffka, maintaining that the photographs were not only gruesome, but had no independent probative value and served only to

prejudice and inflame the jury. But, there was no error in admitting the photographs at issue.

Inasmuch as Pike's trial occurred after January 1, 2013, the effective date of Georgia's new Evidence Code, the Code is applicable to the admissibility of the photographs.

> Pursuant to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible[.]" To evaluate relevancy, this Court relies on OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded under OCGA § 24-4-403 ["Rule 403"] "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. "The 'major function' of Rule 403 is to 'exclud[e] matter of scant or cumulative

9

probative force, dragged in by the heels for the sake of its prejudicial effect.'"

*Ragan v. State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016) (citations omitted). Moreover, "the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Benton v. State*, 301 Ga. 100, 103 (4) (799 SE2d 743) (2017) (citation and punctuation omitted).

The challenged photographs do not depict the victim's autopsy incisions, and they are not especially gory or gruesome in the context of autopsy photographs in a murder case; furthermore, they were relevant to show the nature and location of the victim's injuries, which corroborated the State's evidence of the circumstances of the killing. *Moss v. State*, 298 Ga. 613, 617-618 (5) (b) (783 SE2d 652) (2016). Contrary to Pike's assertion, Klaffka did not die solely from manual strangulation, but also from blunt force head trauma, and the photographs illustrated the nature and extent of the physical beating and resulting trauma sustained by Klaffka. What is more, the state in which Klaffka's body was found was the result of the crimes committed against him, including the dumping of his body into the river.

The challenged photographs were relevant and admissible and there is no

showing that exclusion under Rule 403 was warranted.

4. Finally, Pike contends that the trial court erred in granting the State's motion to present evidence of other crimes, wrongs, and acts pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"),[5] specifically in permitting evidence of the armed robbery at Fluellen's residence two days before Klaffka's murder.

Rule 404 (b) is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence. Despite its inclusive nature, Rule 404 (b) prohibits the admission of such evidence when it is offered

---

[5] OCGA § 24-4-404 (b) provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

11

solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime. Consequently, we use a three-part test to determine if evidence of other uncharged acts is admissible. Our threshold inquiry is whether the evidence is probative of a material issue other than character. Common examples include motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Second, the evidence must meet the requirements of Rule 403 — its probative value must not be substantially outweighed by its undue prejudice. And, third, the State must offer sufficient proof that the defendant committed the act. A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion.

*Thompson v. State*, 302 Ga. 533, 539-540 (3) (A) (807 SE2d 899) (2017) (citations, punctuation and emphasis omitted).

The trial court found that evidence of the armed robbery was admissible to show the motive to commit Klaffka's murder, and evidence of motive is

relevant even if it incidentally places a defendant's character in issue. Id. And, contrary to Pike's assertion, there was ample evidence of the connection between the armed robbery and the killing of Klaffka, i.e., that Klaffka's actions during and after the armed robbery caused concern that he would turn in his cohorts to police, leading to his killing.

As to the second prong of the test for admission under Rule 404 (b), which is scrutiny under Rule 403, the trial court found that the probative value of the evidence outweighed any prejudice from its admission. And, this determination is within the discretion of the trial court after "a common sense assessment of all the circumstances surrounding the extrinsic offense." *Bradshaw v. State,* 296 Ga. 650, 657 (3) (769 SE2d 892) (2015), quoting *United States v. Perez*, 443 F3d 772, 780 (11ᵗʰ Cir. 2006). What is more, the prohibition of evidence under the Rule 403 balancing test is an extraordinary remedy which, as has been noted, should be used only sparingly inasmuch as it permits the exclusion of concededly relevant evidence; in close cases, balancing under Rule 403 should be in favor of admissibility of the evidence. *State v. Jones*, 297 Ga. 156, 164 (3) (773 SE2d 170) (2015), citing *United States v. Merrill*, 513 F3d 1293, 1301 (11ᵗʰ Cir. 2008) and *United States v. Terzado-Madruga*, 897 F2d 1099, 1119

(11th Cir. 1990). There was no abuse of the trial court's discretion in its Rule 403 determination.

Lastly, contrary to Pike's assertion, the trial court found, and properly so, that there was sufficient proof that Pike committed the prior armed robbery. Consequently, there was no abuse of the trial court's discretion in admitting evidence of it at trial.

<u>Judgments affirmed. All the Justices concur</u>.

Decided January 29, 2018.

Murder. Houston Superior Court. Before Judge Lumsden.

<u>Jeffrey L. Grube</u>, for appellant.

<u>George H. Hartwig III, District Attorney, Daniel P. Bibler, Alicia D. Gassett, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General</u>, for appellee.