305 Ga. 366
FINAL COPY

S18A1394.  FAVORS v. THE STATE.

BETHEL, Justice.

Dearies Favors appeals from the denial of his motion for new trial after a jury found him guilty of malice murder and other crimes in connection with the October 2012 death of Demarcus Booker.[1] Favors argues that the trial court abused its discretion by admitting, over Favors' objection, a photograph showing Booker after he had been shot because the photograph was

---

[1] Favors was indicted by a DeKalb County grand jury on January 22, 2013, for malice murder, two counts of felony murder, aggravated assault, armed robbery, and possession of a firearm by a first offender probationer. Following a trial held in June 2014, a jury found Favors guilty on all counts. The trial court sentenced Favors to life imprisonment without the possibility of parole for malice murder and five years consecutive for possession of a firearm by a first offender probationer. The trial court merged the felony murder, aggravated assault, and armed robbery counts with the malice murder count for sentencing. The trial court later amended the sentence nunc pro tunc to vacate the felony murder convictions and resentence Favors to 20 years' imprisonment concurrent for the armed robbery conviction. The other sentences were unaffected. Favors filed a motion for new trial on July 16, 2014, which was later amended. The trial court held a hearing on the motion on March 9, 2018, and it denied Favors' motion in an order dated April 2, 2018. Favors filed a timely notice of appeal, and the case was docketed to this Court's August 2018 term and submitted for a decision on the briefs.

unnecessarily graphic and because it did not accurately depict the crime scene. Additionally, Favors argues that the trial court abused its discretion by denying Favors' request to immediately issue a jury charge regarding sympathy when one of the State's witnesses became emotional during his trial testimony. As we find no abuse of discretion in either of the trial court's rulings, we affirm.

1. Construed in the light most favorable to the verdicts, the evidence presented at trial showed that, in the early morning hours of October 21, 2012, Favors got into a vehicle owned by Booker at an apartment complex. Booker then drove to another nearby complex, where he and Favors argued. During their argument, Favors demanded money from Booker. Favors later admitted to police that he was upset with Booker for being cut out of "being able to make money." Favors also told police that he was upset because he heard a rumor that Booker had blamed Favors for a recent robbery of someone referred to as "Bodyguard."

Christopher Reese, a friend of Booker's, was on the phone with Booker while Favors was riding in Booker's car. As Reese spoke to Booker, he heard someone talking in the background of the call and then heard a gunshot. Reese heard Booker beg for his life and the other voice demand that Booker give him everything he had on him. Reese then heard the speaker mention "Bodyguard."

After hearing a brief exchange between Booker and the speaker, Reese heard several more gunshots. He attempted to talk to Booker, but Booker did not respond. Reese called his wife to inform her that Booker had been shot, and then he called 911 to report the shooting.

At the same time, a witness at the apartment complex heard a car make a loud noise and also heard two people arguing, which prompted him to look out his apartment window down into the parking lot. He could see a vehicle parked below. He watched a man, who was standing on the passenger side of the vehicle, pull out a gun and shoot several times through the open passenger door at the person in the driver's seat. After being shot, the driver's body slumped over the vehicle's steering wheel.

The witness called 911 after hearing the gunshots. The witness then saw the shooter go around the corner of the apartment building but return to the vehicle to retrieve something. He shot the driver an additional time, closed the door to the car, and fled.

Police responded to the scene and found Booker dead in the vehicle. Investigators collected photographs and video of the crime scene, which were later introduced at Favors' trial. A GBI forensic pathologist testified that

Booker's autopsy showed he had been shot five times and that a gunshot to the back of Booker's head caused his death.

Favors was arrested for Booker's murder. After he was taken into custody, Favors provided a statement to the police in which he admitted to shooting Booker in his car while Booker was on the phone and to taking Booker's money and earrings. Favors was on first offender probation at the time he shot Booker.

Although Favors does not challenge the legal sufficiency of the evidence supporting his convictions, adhering to this Court's practice in murder cases, we have reviewed the record and conclude that the evidence recounted above was sufficient to authorize a rational jury to find Favors guilty beyond a reasonable doubt on each of the counts of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Favors first argues that the trial court abused its discretion by admitting, over his objection, a photograph of Booker's body taken at the crime scene that the State introduced in conjunction with the testimony of a crime scene investigator. Favors argues that the photograph did not accurately depict the crime scene at the time of Booker's death because his body was turned from a face-down position to a face-up position before the photograph was

taken. Favors also argues that the trial court abused its discretion by not excluding the photograph pursuant to OCGA § 24-4-403 ("Rule 403").[2] He argues that the graphic nature of the photograph, which depicted gunshot wounds to Booker's body, unfairly prejudiced him and that such prejudice outweighed the probative value of that evidence to the State's case. We disagree with each of these contentions.

(a) First, we find no basis for excluding the photograph on the ground that it did not depict Booker in the exact physical position in which he was found by the law enforcement officers who responded to the crime scene. This is essentially an objection to the relevance of the photograph. However, Favors has made no showing that the physical appearance of Booker or of his wounds was altered prior to taking the photograph at issue. The photograph was therefore "relevant to show the nature and location of [Booker's] injuries, which corroborated the State's evidence of the circumstances of the killing." *Pike v. State*, 302 Ga. 795, 799-800 (3) (809 SE2d 756) (2018) (citing *Moss v. State*, 298 Ga. 613, 617-618 (5) (b) (783 SE2d 652) (2016)). Thus, Favors has

---

[2] As Favors' "trial occurred after January 1, 2013, the effective date of Georgia's new Evidence Code, the Code is applicable to the admissibility of the photographs." *Pike v. State*, 302 Ga. 795, 799 (3) (809 SE2d 756) (2018).

not shown that the trial court abused its discretion by admitting the photograph over this objection.

(b) We also find no abuse of the trial court's discretion in admitting the photograph over Favors' objection under Rule 403, which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have noted that "[t]he major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016).

"[I]n reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017). The application of Rule 403 is a matter committed principally to the discretion of the trial courts, and "the exclusion of evidence under Rule 403 is an extraordinary

remedy which should be used only sparingly." (Citation, punctuation and footnote omitted.) *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

With regard to the photograph at issue, Favors has made "no showing that exclusion under Rule 403 was warranted." *Pike*, 302 Ga. at 800 (3). The photographs introduced by the State showed "the nature and location of the victim's injuries, which corroborated the State's evidence of the circumstances of the killing." Id. at 799-800 (3). As noted in Division 2 (a), supra, the photograph was relevant to the case, "[a]nd the trial court had considerable discretion in determining whether the potential for prejudice substantially outweighed any probative value." *Moss*, 298 Ga. at 618 (5) (b). Photographs depicting the wounds suffered by a gunshot victim are of an inherently disturbing nature, "[a]nd in any event, photographic evidence that fairly and accurately depicts a body . . . and is offered for a relevant purpose is not generally inadmissible under Rule 403 merely because it is gruesome." *Plez v. State*, 300 Ga. 505, 508 (3) (796 SE2d 704) (2017). Thus, we cannot say the trial court abused its discretion in finding that the probative value of these photographs was not substantially outweighed by the risk of unfair prejudice to Favors.

3. Favors also contends that the trial court abused its discretion by declining to issue a charge to the jury regarding sympathy immediately following an emotional outburst by Reese, who testified on the State's behalf regarding what he heard during his phone call with Booker at the time Booker was shot. We find no abuse of the trial court's discretion in its response to, and handling of the proceedings following, that outburst.

At trial, Reese recounted hearing Booker beg for his life after being held at gunpoint and then shot repeatedly. The State then admitted a recording of the 911 call Reese placed shortly after he heard Booker being shot. While the recording played, Reese became emotional. The trial court stopped the playing of the recording and dismissed Reese and the jury from the courtroom.

While the jury was out of the courtroom, and in consultation with counsel for Favors and the State, the trial court decided to allow the State and the defense to conclude their direct and cross-examinations of Reese and then play the remainder of the recording after Reese left the courtroom. Favors' trial counsel agreed with this approach but also requested that the trial court issue "a limiting instruction like the sympathy charge that's in the pattern instructions" immediately upon the jurors' reentry to the courtroom. The trial court replied that it would consider giving that charge when it gave the rest of

the pattern jury charges after the conclusion of the parties' evidence but that giving that instruction in the middle of a witness' testimony would be inappropriate.

The trial proceeded with Reese's testimony, and, as planned, the State played the remainder of the 911 recording after he left the courtroom. The trial court did not issue a sympathy instruction at that time, but its charge to the jury at the conclusion of the evidence instructed as follows: "You are not to show favor or sympathy to one party or the other. It is your duty to consider the facts objectively without favor, affection or sympathy to either party."

"The appropriate response to a witness' show of emotion is a matter addressed to the trial court's discretion." *Williams v. State*, 276 Ga. 384, 385 (2) (578 SE2d 858) (2003) (citing *Todd v. State*, 274 Ga. 98, 102 (5) (549 SE2d 116) (2001)). We have previously noted the grim reality that emotional outbursts are "reasonably expected by one who is a close friend of a murder victim." (Citation and punctuation omitted.) *Williams*, 276 Ga. at 385 (2). Although, in his brief, Favors characterized Reese's emotional outburst as "severe," nothing in the record indicates that Reese "became hysterical or made

any prejudicial comments."[3] *Brannan v. State*, 275 Ga. 70, 80-81 (12) (561 SE2d 414) (2002). Additionally, "the trial court stopped the trial and allowed the witness to compose himself, and it is unlikely that the witness' [emotional response] without more prejudiced [Favors'] defense." *Dick v. State*, 246 Ga. 697, 706 (14) (273 SE2d 124) (1980), overruled on other grounds by *Tolver v. State*, 269 Ga. 530 (500 SE2d 563) (1998). Moreover, any prejudice to Favors' defense was cured by the instruction given by the trial court in its charge regarding objectivity, which the jury is presumed to have followed. *Todd*, 274 Ga. at 102 (5). See also *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004) ("[Q]ualified jurors under oath are presumed to follow the instructions of the trial court."). We thus find no abuse of the trial court's discretion in its handling of this episode during the trial.

Judgment affirmed. All the Justices concur.

---

[3] The relevant portion of the trial transcript does not indicate that Reese made any statement whatsoever after he became emotional. Moreover, at the hearing on Favors' motion for new trial, his counsel described the episode by noting only that Reese "began crying to the point that I believe the jury was sent out of the room." At the same hearing, the State's attorney noted that Reese "had an emotional reaction" to hearing the recording and that "the court had to stop and allow a recess and give the witness a break to compose himself."

Decided March 4, 2019.

Murder. DeKalb Superior Court. Before Judge Johnson.

Gerard B. Kleinrock, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Anna G. Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia

B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.