307 Ga. 300
FINAL COPY

S19A1332.  MATTEI v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Paul Joseph Mattei was found guilty of malice murder, aggravated assault, and various other offenses in connection with the shooting death of Angela Williams.[1]  On appeal, Mattei contends that the evidence presented at trial was insufficient to support his convictions and that the trial court erred by admitting

---

[1] On December 9, 2011, a Fulton County grand jury indicted Mattei for malice murder, felony murder predicated on aggravated assault, felony murder predicated on armed robbery, felony murder predicated on possession of a firearm by a convicted felon, armed robbery, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and insurance fraud.  Following a jury trial ending on March 4, 2014, the jury found Mattei guilty on all counts except for felony murder predicated on armed robbery and armed robbery.  The trial court sentenced Mattei as a recidivist to life without parole for malice murder, two consecutive five-year terms for the weapons charges, and a consecutive ten-year term for insurance fraud, for a total of life plus twenty years.  The two felony murder counts were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the aggravated assault count merged into the malice murder count for sentencing purposes.  Mattei filed a motion for new trial on March 7, 2014, which he subsequently amended through new counsel on January 26, 2018.  On April 10, 2018, after a hearing, the trial court denied Mattei's motion.  Mattei timely filed a notice of appeal to this Court.  His appeal was docketed to the August 2019 term of this Court and submitted for a decision on the briefs.

at trial character evidence in violation of OCGA § 24-4-404 (b). For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence shows that, on the evening of June 30, 2011, Mattei shot Angela Williams twice in the chest and once in the arm, while Williams sat in her car in an isolated parking lot in Fairburn. Mattei then left the scene in his yellow truck, and Williams managed to drive herself a little over one half of a mile to a gas station, where police found her barely conscious. Despite being rushed to the hospital, she was pronounced dead upon arrival. The Fulton County medical examiner concluded that Williams's death was caused by a gunshot wound to the chest.

Two months prior to the murder, Williams and Mattei had entered into a "marriage of convenience." The two did not move in together and kept their marriage largely a secret. Williams told a family member that the purpose of the marriage was for her to assist Mattei with a drug trafficking scheme involving a trip to the Bahamas. The same day that they married, Mattei added Williams

2

as his spouse to his insurance policy. Under the terms of Mattei's family-rider policy, Mattei would collect $150,000 upon his spouse's accidental death.

Days before the Bahamas trip, Mattei told Williams the plan had changed, and they would be going to Florida instead of the Bahamas. On the night of her murder, Williams was scheduled to meet with Mattei to discuss their travel plans. Video surveillance recordings from surrounding businesses showed Williams's vehicle following Mattei's truck in the direction of the parking lot where she was shot, just ten minutes before the shooting. The recordings also showed his truck driving away from the scene shortly before rescue vehicles arrived.

Police discovered that searches for how to obtain a death certificate had been made on Mattei's computer hours after Williams's shooting. The police also discovered that Mattei had made three inquiries between June 18, 2011 and July 4, 2011, checking on his life insurance policy. In a search of Mattei's vehicle after his arrest, police found paperwork that could be used to file a

3

life insurance claim along with information on how to obtain a death certificate. On August 12, 2011, after obtaining the death certificate from Williams's daughter, Mattei notified the insurance company of Williams's death.

At trial, Crystal Bridges, Mattei's former roommate, testified that shortly after she moved in with Mattei in December 2009, he approached her about an insurance fraud scheme involving him running her over with his truck so they could file an insurance claim. A jailhouse informant, Marlon Avila, testified that in July 2013, he and Mattei were housed in the same unit. During that time, Mattei told Avila that he had shot his wife three times with a .380 handgun. An analysis of the shell casings recovered from Williams's car showed she had been shot with a .380 handgun.

Mattei attacks Avila's testimony regarding his confession as "uncorroborated and unreliable." But, issues of witness credibility are for the jury to decide. See *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). Based on the foregoing, we conclude that the evidence was sufficient to enable a rational trier of fact to conclude

4

beyond a reasonable doubt that Mattei was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Next, Mattei contends that the trial court erred by admitting into evidence Bridges's testimony about Mattei's 2009 conversation with her regarding a proposed insurance scheme. According to Mattei, this conversation was extrinsic evidence that had no logical relation or relevance to the charged murders. We disagree.

Because Mattei's trial occurred after January 1, 2013, the admissibility of the extrinsic evidence in question in this case is governed by OCGA § 24-4-404 (b) ("Rule 404 (b)"). See *Booth v. State*, 301 Ga. 678 (3) (804 SE2d 104) (2017). And, a trial court's decision regarding the admissibility of such evidence is reviewed for abuse of discretion. See *Smith v. State*, 302 Ga. 717 (4) (808 SE2d 661) (2017). Rule 404 (b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan,

5

knowledge, identity, or absence of mistake or accident.

Other acts evidence is admissible where:

> (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

*Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).[2]

Here, the trial court found that Bridges's testimony was admissible for the proper purpose of showing motive. "Motive is the reason that nudges the will and prods the mind to indulge the criminal intent." (Citation and punctuation omitted.) *Brooks v. State*, 298 Ga. 722, 726 (2) (783 SE2d 895) (2016). And, "evidence of motive is relevant even if it incidentally places a defendant's character in issue." *Pike v. State*, 302 Ga. 795, 801 (4) (809 SE2d 756) (2018). "Overall similarity between the charged crime and the

---

[2] Mattei does not dispute that Bridges's testimony is sufficient evidence from which the jury could find that the 2009 conversation occurred. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Therefore, we only address the first two prongs of the test for admissibility of the other acts evidence under Rule 404 (b).

extrinsic offense is not required when the offense is introduced to show motive, but the extrinsic evidence must be logically relevant and necessary to prove something other than the accused's propensity to commit the crime charged." (Citation and punctuation omitted.) *Kirby v. State*, 304 Ga. 472, 486-487 (4) (b) (819 SE2d 468) (2018).

(a) *Relevance.* Bridges testified that, sometime around December 2009, Mattei asked her to participate in a scheme in which he would run over her with his employer's truck and then get money from filing an insurance claim. This evidence of Mattei's willingness to harm another person for the specific purpose of collecting insurance money was relevant to show his motive in killing Williams for the purpose of obtaining insurance money. Indeed, the trial court instructed the jury that the extrinsic evidence could be considered only with respect to Mattei's motive to commit murder.[3] The insurance scheme was not admitted to show Mattei's

---

[3] Before Bridges took the stand, the trial court instructed the jury that her testimony was being admitted for the limited purpose of showing motive

alleged propensity to commit the charged offense of murder or some other crime with which he was charged, but was relevant to his potential reason for killing his wife. See OCGA § 24-4-401 ("Rule 401") ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); see also *Booth*, supra, 301 Ga. at 683 (3) ("The test for relevance under Rule 401 is generally a liberal one . . . .").

(b) *Probative Versus Prejudicial Value.* "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." OCGA § 24-4-403 ("Rule 403"). "[T]he exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) *Fleming v. State*, 306 Ga. 240,

---

with respect to the murder counts, and that they could *only* consider her testimony "insofar as it may relate to that issue that is for motive and not for any other purpose." The trial court further instructed the jury that they "may not infer from such evidence that the defendant is of a character that would commit such crimes."

8

247 (3) (b) (830 SE2d 129) (2019). We examine whether "the trial court abused its discretion in performing the balancing required by the rule." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017).

Here, the State needed the extrinsic evidence to rebut Mattei's contention that his act of insuring Williams and his possession of paperwork for filing an insurance claim were consistent with the normal activities of a newly married husband, rather than the actions of a person who was motivated to kill his wife in an effort to collect insurance proceeds. Furthermore, the conversation with Bridges occurred just 18 months prior to Williams's death, meaning it was not "so remote as to be lacking in evidentiary value." (Citation and punctuation omitted.) *Kirby*, supra, 304 Ga. at 484 (4) (a) (i). Any danger of unfair prejudice to Mattei was mitigated by the limiting instruction that the trial court gave to the jury. See *United States v. Edouard*, 485 F3d 1324 (II) (C) (1) (11th Cir. 2007). The jury is presumed to have followed this instruction. See *Womac v. State*, 302 Ga. 681 (2) (808 SE2d 709) (2017). For these reasons, we cannot say that the trial court abused its discretion by concluding

that the probative value of Bridges's testimony regarding Mattei's other recent insurance scheme was not substantially outweighed by the danger of unfair prejudice to Mattei at his murder trial.

The trial court did not abuse its discretion in admitting Bridges's testimony at Mattei's trial to show his potential motive to commit the murder at issue in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2019.
Murder. Fulton Superior Court. Before Judge Dempsey.
*David D. Marshall*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Teri B. Walker, Richard B. Caplan, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General,* for appellee.