NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 21, 2025

S25A0645.  MOMON v. THE STATE.

BETHEL, Justice.

A jury found Tarell Momon guilty of murder for the shooting death of Michael Riley.[1] On appeal, Momon argues that his trial counsel provided ineffective assistance by failing to make several evidentiary objections and that the cumulative effect of those errors

---

[1] The shooting occurred on June 30, 2013. On September 10, 2013, a Bulloch County grand jury jointly indicted Momon, Terrance Ray Griswould, Katrina Denise Ledford, and Antoinette Brady Riley for malice murder (Count 1) and possession of a firearm during the commission of a felony (Count 2). The indictment identified Travis Berrian as a co-conspirator, but Berrian died before trial. Ledford and Antoinette pleaded guilty to murder, and Momon and Griswould were jointly tried before a jury in November 2014. For Momon, the jury returned a guilty verdict on Count 1 and a not guilty verdict on Count 2. The jury found Griswould not guilty on both counts. The court sentenced Momon to serve life in prison with the possibility of parole. Momon filed a timely motion for new trial on December 19, 2014, which new counsel amended multiple times. Following delays from the COVID-19 pandemic and Momon's hiring new counsel, the trial court denied the motion for new trial on December 13, 2024. Momon filed a timely notice of appeal, and the case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

denied him a fundamentally fair trial. Momon's claims fail for the following reasons, so we affirm.

1. The evidence presented at trial showed the following. Around 7:00 a.m. on June 30, 2013, Riley was fatally shot in his home. His wife Antoinette Riley—who was sleeping in a different bedroom because of their marital strife—claimed she heard an intruder enter the house and fire a gun. She called the police, who arrived and found Riley dead with a gunshot wound to the face. Police then questioned Antoinette and searched her phone. They found only a single text message, received shortly after the murder, from a number with a 678 area code and the contact name "King." The message, signed "Tha.gifted," read: "Well mom I need u you [*sic*] nut up … but wait till they go like I said give them about 30mins then call!!!" After several subsequent interviews, police arrested Antoinette as a suspect in her husband's death.

Officers soon obtained Antoinette's cell phone records and identified two numbers that she repeatedly contacted around the time of the murder. One number belonged to Antoinette's daughter

Katrina Ledford, who was later indicted as a party to Riley's murder. The other number—the 678 number from which Antoinette received the text message shortly after the murder—was used by Momon, who was incarcerated and in a romantic relationship with Ledford. Officers then obtained Ledford's and Momon's cell phone records, which revealed repeated texts and calls between Momon's and Ledford's cell phones and between Momon's and Antoinette's cell phones. In one message, Antoinette's phone texted Momon's phone that she did not have "a drop of love left" for Riley and that he "needs to go." Her phone also texted Riley's phone number and home address to Momon's phone, which responded: "Got you Ma. The gifted." In another message, Momon's phone texted Ledford's phone that he would have his friends beat Riley up, but later said he was "getting in touch with them now, but they say they are going to kill." Ledford's phone responded that "she d[id]n't want her house messed up."

The phone records also showed that, hours before the murder, Momon's phone texted Antoinette's phone that "they" were "coming

3

tonight." Momon's phone also asked Antoinette's phone if "he" was there and asked what the color of her front door was. Her phone responded that it was green. In the hours and minutes surrounding the murder, multiple calls and texts were exchanged between Ledford's, Momon's, and Antoinette's phones. Among other things, Momon's phone asked Antoinette's phone shortly before the murder, "They in?" Antoinette's phone responded, "I think so[,] I hear movement on the stairs," and then, "[t]hey shot him."

In addition to Antoinette's and Ledford's numbers, Momon's phone repeatedly contacted two other phone numbers, one with a 706 area code and the other with an 803 area code. Before the murder, Momon's phone texted Riley's name and street address to the 803 number. And around the time of the murder, Momon's phone repeatedly called the 706 number, which pinged a cell tower within a few blocks of Riley's home around the time he was shot. Investigators later learned that co-defendant Terrance Griswould used the 706 number. And following Griswould's arrest, police obtained records for the 706 number phone records and recovered

4

repeated communications between the 803 number and with Momon's phone. Police later connected the 803 number to co-indictee Travis Berrian, to whom Griswould claimed to have lent his car and phone on the day of the murder.

At trial, the State argued, based substantially on the cell phone records, that Momon enlisted Berrian and Griswould to murder Riley at Antoinette's and Ledford's behest. The jury acquitted Griswould but found Momon guilty of murder.

2. Momon alleges that his trial counsel provided constitutionally ineffective assistance in numerous ways. To demonstrate ineffective assistance, a defendant must show both that his trial counsel performed deficiently and that the deficiency prejudiced his defense. *Smith v. State*, 315 Ga. 357, 365 (2022) (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). The deficiency prong requires the defendant to "show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Williams v. State*, 316 Ga. 304, 314–15 (2023) (quotation marks

5

omitted). That inquiry "focus[es] on the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *State v. Tedder*, 305 Ga. 577, 584 (2019). The prejudice prong requires the defendant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith*, 315 Ga. at 365. Showing that the error had "some conceivable effect on the outcome of the proceeding" is not enough; the defendant must instead "establish a 'reasonable probability' of a different result, which means 'a probability sufficient to undermine confidence in the outcome.'" *Neuman v. State*, 311 Ga. 83, 96–97 (2021) (quoting *Strickland*, 466 US at 693, 694). Demonstrating ineffective assistance is a "high bar," *Mohamed v. State*, 307 Ga. 89, 93 (2019), and if a defendant fails to show either deficiency or prejudice, we are not required to consider the other. Id.

Here, Momon claims his trial counsel provided ineffective assistance by failing to raise various evidentiary objections. To demonstrate deficiency on that basis, a defendant must show that "no reasonable lawyer would have … failed to" make the objection.

6

*State v. Spratlin*, 305 Ga. 585, 591 (2019). And a defendant fails to carry that burden if, for example, the objection would not have been sustained, *Davis v. State*, 306 Ga. 140, 146 (2019), or if the disputed evidence is cumulative of other, admissible evidence, *Koonce v. State*, 305 Ga. 671, 676 (2019). A competent attorney need not make every objection that would be sustained, *Spratlin*, 305 Ga. at 594 n.4, so a defendant alleging ineffective assistance must show that not objecting to certain testimony was a "patently unreasonable" strategy, *Young v. State*, 305 Ga. 92, 97 (2019).

(a) Momon first claims that his trial counsel should have raised several objections to the State gang expert's testimony. At trial, the State elicited testimony from a prison security-threat investigator, qualified as an expert in street gang affiliation in prison, who testified about the process of screening incoming inmates to determine whether they are associated with a gang. The expert described how security-threat investigators conduct interviews and complete standardized gang affiliation forms for incoming inmates suspected of gang affiliation. And through the expert's testimony,

7

the State introduced gang affiliation forms for Momon and Berrian. The expert then provided some context for information on Momon's and Berrian's forms, including how and why both were validated as members of the Gangster Disciples, which the expert explained was a subset of the Folk Nation alliance of gangs. And he testified that Momon denied gang affiliation in response to every question asked during his threat assessment. The expert also testified about the "other comments" section of Momon's form, which indicated that Momon was a leader in the Gangster Disciples, had ordered an attack on another inmate, and had been involved in a contraband drug and cell phone ring while incarcerated.

On appeal, Momon says the gang expert provided no expert testimony and instead simply "regurgitated" information from Momon's and Berrian's gang affiliation assessments, which the expert did not prepare. Momon also says that, even if the gang expert provided some expert testimony, he was not permitted to

simply read the hearsay supporting that testimony into the record.[2]

But Momon has not shown that no reasonable attorney would have failed to make those objections. See *Blalock v. State*, 320 Ga. 694, 700 (2025) ("[T]he making of objections falls within the realm of trial tactics and strategy and thus usually provides no basis for reversal of a conviction." (quotation marks omitted)). He instead argues only that the objections would have been meritorious and repeatedly cites his trial counsel's new trial hearing testimony that he could not recall strategic reasons for not making various objections. But subjective intent (or memory of it) does not

---

[2] Momon also claims the gang expert improperly commented on Momon's exercising his Fifth Amendment right against self-incrimination by testifying that Momon offered no response to any of the gang affiliation assessment questions. Momon asserts that his trial counsel was ineffective for failing to object on that basis. But Momon has forfeited this claim because he did not raise it in the trial court. See *Patterson v. State*, 314 Ga. 167, 171 (2022) ("Ineffectiveness claims must be raised and pursued at the earliest practicable moment, which for a claim of ineffective assistance of trial counsel is at the motion for new trial stage if the defendant is no longer represented by the attorney who represented him at trial."). Momon's new counsel asked Momon's trial counsel about the issue at the motion for new trial hearing, but new counsel made no argument about the alleged improper comment, did not mention it in the amendments to Momon's motion for new trial, and the trial court did not rule on it. "[Q]uestioning during the motion-for-new-trial hearing, by itself, is insufficient to amend a motion for new trial to add a claim where the trial court did not rule on the claim," *Patterson*, 314 Ga. at 171, so Momon has forfeited this claim.

9

determine whether it was *objectively* unreasonable not to make the objections Momon contends his trial counsel should have made. See *Tedder*, 305 Ga. at 584; *Lane v. State*, 312 Ga. 619, 623 (2021) ("[W]e are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way." (punctuation omitted)). In fact, we have held that undermining testimony on cross-examination rather than objecting to it can be reasonable trial strategy. *Koonce*, 305 Ga. at 673–74 (cross-examination rather than objection is not deficient performance unless so "patently unreasonable … that no competent lawyer would have made it"). And here, the record demonstrates that Momon's trial counsel vigorously cross-examined the gang expert, undermining his testimony by eliciting further testimony that inmates who enter prison young (like Momon) often join gangs

10

for protection; that there are roughly 650 recognized gangs and 11,000 validated gang members in Georgia prisons (which could suggest that gang membership is prevalent and says little about whether one might orchestrate a murder) and that the gang expert did not conduct Momon's or Berrian's gang affiliation assessments and thus had no personal knowledge of them. Even if some of the gang expert's testimony "regurgitated" hearsay, Momon has not shown that it was objectively unreasonable to decline to object on that basis, instead allow the testimony in, and undermine it on cross-examination. That strategy could avoid the risk of drawing the jury's attention to the evidence, suffering an adverse ruling in front of the jury, or appearing concerned about the expert's testimony. Especially when there was other evidence of Momon's gang membership—including his girlfriend Ledford's direct testimony to that effect—we cannot say that no reasonable attorney would have handled potential hearsay in the gang expert's testimony through cross-examination rather than an objection. Accordingly, this enumeration of error fails.

(b) Momon next claims his trial counsel provided ineffective assistance by not objecting to other parts of the gang expert's testimony which, Momon says, fell outside the witness's expertise. At trial, the gang expert addressed Momon's and Berrian's "movement records," which track the occurrence of and reasons for inmates' residence transfers inside and between prisons. He testified that, based on the pair's movement history, they were housed in the same dorm but not the same cell for a few weeks several years earlier. And he explained that transfers for disciplinary infractions could include, among other things, contraband possession and (in Momon's case) trouble with other inmates. Momon says the testimony exceeded the gang expert's expertise because he was not admitted as an expert in prisoner movements and because he testified about misconduct unrelated to gang activity.

But Momon has not shown that objecting to the gang expert's testimony about prisoner movements would have been successful, which ends the deficiency inquiry. See *Denny v. State*, 321 Ga. 427,

12

431 (2025) ("[Appellant] has not shown that trial counsel was deficient in failing to lodge such an objection because he has not shown that it would have succeeded."). At the time of Momon's trial, a witness in a criminal proceeding was qualified to give expert testimony so long as he "ha[d] been educated in a particular skill or profession[, and] his special knowledge [could] be derived from experience as well as study." *Davis v. State*, 301 Ga. 397, 406–07 (2015) (quotation marks omitted).[3] Indeed, former OCGA § 24-7-707 provided that, "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Applying that broad standard, we rejected, for example, challenges to the scope of a psychiatrist's expert testimony about brain damage, *Moody v. State*, 316 Ga. 490, 528–30 (2023),

---

[3] The General Assembly subsequently repealed § 24-7-707 and extended the civil standard for expert testimony to criminal proceedings. *Reddick v. State*, 321 Ga. 73, 85 n.7 (2025) (citing OCGA § 24-7-702). But we assess objective reasonableness based on trial counsel's perspective at the time of trial, so we apply the law that was in effect at that time. See *Rhoden v. State*, 303 Ga. 482, 484–86 (2018). Here, that means former OCGA § 24-7-707 informs whether an objection to the scope of the gang expert's testimony would have been successful.

and the scope of a medical examiner's expert testimony about confessions in child-abuse cases, *Johnson v. State*, 316 Ga. 672, 686 (2023). Here, neither the record nor Momon offers any support for the suggestion that an objection to the scope of the gang expert's testimony would have succeeded. The trial court qualified that witness as an expert in gang affiliations in prison, especially as it related to the witness's job as a prison security-threat investigator. In that role, the gang expert was familiar with prisoner movement records. He explained to the jury how those forms are kept and what their various notations mean, explained how they showed possible contact between Momon and Berrian, and explained some of Momon's transfers based on misconduct or trouble with other inmates. Given his experience and the subject matter on which the gang expert was qualified to offer expert testimony, we cannot say that an objection to the scope of his testimony would have succeeded. Cf. *Lopez v. State*, 350 Ga. App. 662, 664 (2019) (former gang member turned gang prosecutor could testify about a different gang, and challenge to qualifications was really challenge to weight and

14

credibility of testimony).

Momon cites only one case, *Robertson v. State*, 225 Ga. App. 389 (1997), to support his claim that the gang expert's testimony about Momon's and Berrian's movement records exceeded his expertise. But *Robertson*, a Court of Appeals case, upheld a trial court's ruling that a *physician* could not offer expert testimony about *ballistics*; it concerned an expert in one field attempting to testify about another field, not the scope of an expert's testimony within a particular field. Id at 389–90. And barring a physician from testifying about a discipline unrelated to medicine does not mean that the expert witness here—who was qualified to testify about gang affiliation and security threats in prison—would be unqualified to testify about prisoner movements and related misconduct. Momon has not shown this objection had merit, so he has not shown that his trial counsel was deficient in failing to make it. See *Denny*, 321 Ga. at 431.

(c) Momon next asserts that his trial counsel provided ineffective assistance by not objecting to testimony about three

15

phone numbers connected with the co-indictees. At trial, the State elicited testimony from a detective who detailed how he attributed certain phone numbers to Momon, Griswould, and Berrian. The detective testified that Ledford identified the 678 area code number as belonging to Momon. And the detective testified that officers attributed the 706 and 803 area code numbers to Griswould and Berrian, respectively, based on a car accident report where the men provided those numbers as contact information. Momon claims his trial counsel rendered ineffective assistance by not raising hearsay objections to that testimony.

(i) Momon cannot show deficiency as to testimony about Momon's and Griswould's phone numbers. Trial counsel does not perform deficiently by not raising a hearsay objection where purported hearsay evidence is cumulative of other admissible evidence. *Koonce*, 305 Ga. at 676. Here, Ledford testified that the 678 area code number was Momon's and that messages she received from that number were from him. Antoinette testified extensively about messages she sent to and received from Momon at the 678

16

area code number. And another witness testified that the 706 area code number was Griswould's. Plus, the 706 area code number's text message records, obtained from a cell carrier, matched those downloaded from the phone Griswould surrendered to the police. Because that other testimony was admissible, Momon's trial counsel was not deficient for not objecting to duplicative testimony about Momon's and Griswould's phone numbers. See *Koonce*, 305 Ga. at 676; *Hill v. State*, 310 Ga. 180, 192–93 (2020) (failure of counsel to act in a way that "would have been fruitless … [does] not constitute deficient performance").

(ii) Pretermitting deficiency regarding testimony about Berrian's phone number, Momon has not shown prejudice. The evidence of his guilt was strong even absent the testimony about Berrian's phone number: Momon has not established a reasonable probability that the outcome of the trial would have been different had Momon's trial counsel raised that objection. See *Blalock*, 320 Ga. at 702. See also, e.g., *Calhoun v. State*, 308 Ga. 146, 153 (2020) (no prejudice from assumed deficiency given strength of evidence of

17

guilt). Momon suggests that without the car accident report, there was little evidence tying Berrian to the 803 area code number and therefore little evidence tying him to Berrian, the alleged shooter whom Momon allegedly enlisted to kill Riley. But even if the 803 area code number belonged to an unknown third party, we fail to see how a reasonable jury would view that as undermining the strong evidence of Momon's guilt, including evidence that Momon, using the 678 number, coordinated Riley's murder. Momon concedes that the State "produced significant evidence of connections between Momon, Ledford, and Antoinette." Thus, whomever Momon enlisted to pull the trigger, the record supports the inference that Momon did the enlisting. That is what mattered for the State's theory of the crime, so excluding the evidence linking Berrian to the 803 number likely would not have changed the outcome of Momon's trial. See *Blalock*, 320 Ga. at 702. Momon has not shown prejudice, so this claim fails.

(d) In his final ineffective assistance claim, Momon argues that his trial counsel should have objected to certain gang-affiliation and

prison-misconduct evidence as irrelevant, see OCGA § 24-4-401 ("Rule 401"), and unfairly prejudicial, see OCGA § 24-4-403 ("Rule 403"). In a pretrial motion and at a pretrial evidentiary hearing, Momon sought to exclude evidence from Momon's movement records and gang affiliation assessment form: his validation as a member of the Gangster Disciples and evidence of prison misconduct not explicitly related to gang activity, including "contraband introduction" and "assault towards other inmates." The trial court deemed the evidence admissible to the extent it tended to establish a connection between Momon and Berrian. When the State sought to introduce the evidence at trial, the court asked Momon's attorney whether he had an objection, and counsel responded, "no objection." Momon now claims his trial counsel waived his earlier objections to the evidence by stating "no objection" when it was admitted. And he claims this was deficient because that evidence was not relevant under Rule 401 and unfairly prejudicial under Rule 403.

Assuming for purposes of our analysis that Momon's trial counsel in fact waived the Rule 401 and Rule 403 objections, Momon

19

has not shown that reasserting those objections would have succeeded. That failure is fatal to his deficiency claim. See *Bowling v. State*, 289 Ga. 881, 887 n.5 (2011) ("[T]rial counsel could not have been ineffective, however, for failing to make or preserve a meritless objection.").

(i) Relevant evidence is evidence with "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. That standard is a "liberal one." *State v. Jones*, 297 Ga. 156, 159 n.2 (2015). The State's theory of the crime was that Momon, a high-ranking gang member, ordered a subordinate gang member or members to execute Riley. Evidence of gang membership—either direct or inferential—could make it more probable that Momon was in a position to order Riley's murder. Momon has not shown that a Rule 401 objection would have succeeded, so he has not shown that his trial counsel was deficient for not making it. See *Denny*, 321 Ga. at 431.

(ii) Momon also has not shown that a Rule 403 objection would

have succeeded, which means he has not shown deficiency. See id. Relevant evidence should be excluded when it causes unfair prejudice that substantially outweighs its probative value. OCGA § 24-4-403. Exclusion for unfair prejudice is an "extraordinary remedy which should be used only sparingly." *Dougherty v. State*, 321 Ga. 577, 583 (2025). Momon argues that evidence of his Gangster Disciples affiliation and prison misconduct constituted "attacks on [his] character." But we cannot conclude that the risk of unfair prejudice substantially outweighs the probative value of that evidence. Even if evidence of Momon's connection to the Gangster Disciples and evidence of certain prison misconduct (like contraband rings and involvement in multiple violent confrontations with other inmates) were only minimally probative, any assumed unfair prejudice from that evidence would be minimal as well. Other evidence of Momon's gang affiliation (including Ledford directly testifying that Momon was affiliated with the Gangster Disciples) and evidence that Momon had been transferred within and between prisons for various kinds of misconduct blunted any unfair prejudice

21

from the largely cumulative evidence he challenges here. This is especially so considering the trial court's instruction that the jury could not consider evidence of Momon's gang affiliation to be evidence of bad character.[4] See *Mattei v. State*, 307 Ga. 300, 304 (2019) (limiting instruction can mitigate risk of unfair prejudice). So we cannot conclude that this evidence, with similarly low probative value and unfair prejudice, would have been excluded had Momon's trial counsel raised a Rule 403 objection. Thus, Momon has not shown that it was objectively unreasonable for his trial counsel not to make that objection. See *Denny*, 321 Ga. at 431.

3. Finally, Momon claims his trial counsel's purported deficiencies cumulatively prejudiced Momon. But we presumed only one deficiency by Momon's trial counsel, so there is nothing to aggregate, and this claim fails. See *Flood v. State*, 311 Ga. 800, 808–09 (2021) ("[W]hen reviewing a claim of cumulative prejudice, we evaluate only the effects of matters determined to be error, not the

_____

[4] Momon does not argue that his trial counsel should have objected to this evidence based on OCGA § 24-4-404. He argues only that his trial counsel should have reasserted objections based on Rule 401 and Rule 403.

22

cumulative effect of non-errors." (quotation marks omitted)).

*Judgment affirmed. All the Justices concur.*